NEW-YORK,<br>May, 1831.<br>Jackson<br>v.<br>Winne.

*Judgment for plaintiff on demurrer.*

---

JACKSON, ex dem. Dies and wife, *vs.* E. WINNE.

A *marriage* is complete, if there be a full, free and mutual *consent* between parties capable of contracting, though not followed up by cohabitation.

The circumstance of a party being under *arrest* as the *putative* father of a bastard child, is not enough to avoid the contract on the ground of duress.

In deciding upon the question of the sufficiency of the *assent,* the court will look principally to the facts which transpired at the espousals.

Where a man by his will devised real estate to three sons, adjudged to be illegitimate, "if they should live to come of age," *it was held,* that during their minority the property went to the *heir at law,* though *it seems* that the heir in such case takes only as *trustee,* and not in his own right.

THIS was an action of *ejectment,* tried at the Delaware circuit in November, 1828, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The lessors of the plaintiff claimed to recover the premises in question in the right of *Parthenia,* the wife of *Dies,* as the *heir at law* of Enoch Copley, deceased. The defence set up was, that the *marriage* of Enoch Copley with the mother of

NEW-YORK, Parthenia was not *valid*, and that Enoch Copley, by his last
May, 1831.　will and testament, had devised all his real estate to three

Jackson
v.
Winne.

sons. The facts in relation to the marriage of Copley, and
the mother of Parthenia, were somewhat peculiar. About
the year 1800, Copley was arrested on a warrant issued on
the complaint of the overseers of the poor of the town of *Blen-
heim*, in the county of Schoharie, under the *bastardy act*, on a
charge of having gotten Joanna Desilva, the mother of Parthe-
nia, with child; he was taken to the house of Joanna's fa-
ther, from whence he went in company with Joanna, her fa-
ther, mother and the constable to the house of Cornelius
Lanes, Esq. a justice of the peace, to be married; the justice
asked Copley and Joanna if they consented to be married, and
told them to join hands; Copley dropped his hand and turned
from Joanna—she took it and held it, until they were pronounc-
ed man and wife. Upon Copley refusing to take the hand of
Joanna, the justice hesitated, but after a minute or two pro-
ceeded, concluded the ceremony, and pronounced them man
and wife. Copley, during the whole time, said nothing. It was
the custom of this justice, when he performed a marriage cere-
mony, to make a prayer, but upon this occasion he declined
doing so; Desilva, the father of Johanna, however, made a pray-
er, and after the parties were gone, the justice told his wife,
or the constable, that he did not feel right to make a prayer,
and therefore put it on Desilva. Joanna returned to her father's
house, but Copley did not return with her, and they never co-
habited after their marriage. Three days afterwards Copley
married another girl, one Mary B., who became a mother
about the same time that Parthenia, the daughter of Joanna,
was born, which was between three and six months after the
marriage of Joanna; about a month after his marriage, Cop-
ley told a witness in this cause that he married Joanna on
*Thursday*, and on the succeeding *Sunday* he married Mary.
Copley lived with Mary B. until her death in 1812; he had
by her one daughter, who is now living. After the death
of Mary B. he married the defendant in this cause, by whom
he had six children. Joanna also, some years after 1800, be-
came the wife of another man, and is now living. As to the
other part of the defence, a will of Copley's was proved,

bearing date the 31st May, 1827, whereby he gave one third of his real and personal estate to his wife Elizabeth, (the defendant in this cause,) during her natural life, if she should remain his widow ; and then to return to his three sons, George, William and Myron, if they should live till after the decease of their mother ; then, after pecuniary bequests to his daughters, and a small legacy to *Parthenia Copley*, the daughter of Joanna Desilva, and wife of John Dies, follows a clause in these words : " I also give and devise unto my three sons, George, William, and Myron, the remainder of my property, both real and personal estate, *if they should live to come of age*, and their mother's thirds after her disease, if she remains my widow." The eldest of these children is *fourteen*, and the youngest between three and *four* years of age. In October, 1828, but probably after the commencement of this suit, the defendant married one Flansbury. A verdict was found for the plaintiff, subject to the opinion of this court.

*A. Van Vechten*, for the plaintiff, insisted, 1. That the marriage of Copley with Joanna Desilva was a valid marriage, and that Parthenia, the wife of Dies, is the heir at law of Copley ; 2. That the children of Copley by Mary B. and by the defendant are illegitimate ; and 3. That as Copley had not appointed any one to take the profits of the real estate devised to his sons, until they arrived of age, the legal estate descended to the heir at law, until the contingency happened upon which the devisees were to take ; and that the lessors were therefore entitled to recover at least two thirds, if not the whole of the premises in question ; and whether they took as trustees or otherwise was immaterial, as it regarded the right to recover.

*S. Sherwood*, for the defendant, insisted, 1. That a *valid* marriage was not shewn between Copley and the mother of Parthenia Dies ; that what took place before the justice did not amount to a marriage, and if the consent of Copley could be implied, the marriage contract was void, as made under *duress ;* and 2. That by the will of Copley, the premises claimed are devised ; a life estate in one third is given to the de-

fendant ; and that as such *devisee* and as *guardian* for her sons, she is entitled to the possession; that the will gives a vested remainder of one third of the real estate to the three sons, to take effect after the life estate of the wife, and an estate *in præsenti* as to the other two thirds ; or if such estate is not given, an estate in fee is given to each on his arriving of age, in one third of the remaining two thirds, and a vested remainder in the survivors, if either should die before arriving of age.

By THE COURT. The maxim of the civil law, *nuptias non concubitas sed consensus facit,* Dig. L. 50, tit. 17, § 30, or one of the same import, has ever been regarded in courts of common law as a good definition of marriage. There is an expression in Wood's Institutes of the Laws of England, Inst. 57, which, if examined without its context, might seem to imply that cohabitation as well as consent was required to make a valid marriage. " Marriage or matrimony," he observes, " is an espousal *de præsenti,* and a conjunction of man and woman in a constant society ;" but the very next sentence is a translation of a latin maxim, similar to the one quoted from the civil law. " Mutual consent," he says, " makes the marriage before consummation." The language of Jacob, in his Dictionary, tit. Marriage, is less liable to misconstruction. He says : " Nothing more is necessary to complete a marriage, by the laws of England, than a full, free and mutual consent between parties" not incapable of entering into such a state. Wood, in his Institute of the Civil Law, p. 120, says that " *Espousals de præsenti* or marriage is contracted by consent only without carnal knowledge." To ascertain whether a valid, marriage was actually solemnized between Copley and Joanna Desilva, we are to look at their situation when before the justice, and what took place on that occasion. The evidence is very satisfactory that they went before him expressly for the purpose of solemnizing their matrimonial contract, and that Copley yielded his consent to it.

Was that consent the result of duress ? There is nothing to warrant such conclusion, besides the fact that Copley was in the custody of the constable on a proceeding instituted by the overseers of the poor. The necessary consequence of his mar-

riage was a discharge from any liability to them. If a cohab-

itation had followed the alleged mariage, neither Copley him-
self, nor any other person, would have been listened to, if he
had attempted to establish its nullity, upon the ground of his
restraint. We will not say that we ought to disregard entirely
the subsequent conduct of the parties in settling the question
as to his free consent. The rule of law on this subject, as
established in England, it appears to us, it would be safe and
judicious to follow, although it be the rule of an ecclesiastical
court. It is long since the jurisdiction in most matters relating
to marriage passed from the courts of law in that country to
the ecclesiastical courts. If the parties to an alleged matri-
monial contract are *infra annos nubiles*, the ecclesiastical
judge passes upon the assent, and determines what is a suffi-
cient assent, and what not. His certificate is the proof requir-
ed, and where he has cognizance, courts of law give, and it is
necessary to the administration of justice that they should
give, the same credit to the sentence of an ecclesiastical tribu-
nal, as such a tribunal is bound to yield to the judgments of the
common law courts on matters within their jurisdiction. 2
Lilly's Abr. 244. c. It is very evident that the ecclesiastical
court in deciding upon the sufficiency of the assent of the par-
ties, can regard only what takes place at the ceremony. We
ought therefore to confine our intention almost exclusively to
the facts attending the espousals before the justice ; and, doing
so, we cannot say that the mere circumstance that Copley had
involved himself in difficulty with the overseers of the poor
by his previous connection with Joanna, and that he took the
step he did with some reluctance, is enough to show that he
did not yield his full and free assent to the marriage solemn-
ized before the justice. To nullify on such slight grounds, so
solemn a contract as that of marriage, would jeopardize, in
too many instances, the blessings which spring from the dear-
est civil and social relation. We are therefore bound to say
that Copley's marriage with Joanna was valid, and she being
still alive, he consequently can have no legitimate issue by any
other woman. Parthenia, one of the lessors of the plaintiff,
is his only heir at law.

Whether Parthenia inherits any thing from him, depends upon the construction of his will. The devise in the will is as follows: " I also give and devise unto my three sons, George, William and Myron, the remainder of my property, both real and personal estate, *if they should live to come of age*, and their mother's thirds, after her decease, if she remains my widow." One third part of his real and personal estate, by a previous clause in the will, had been given to the defendant, during her natural life, if she should remain his widow. It seems not to be necesary to the decision of the question now before us, to determine whether the estate given to Copley's three sons commenced *in præsenti*, to be enjoyed *in futuro*, or whether it will vest when they arrive at the age of twenty-one years. We would depart wholly from the language of the devise, should we decide that the sons were entitled to the immediate possession of the property. They cannot have it during their minority. Who has it until they are of age ? The heir at law undoubtedly. It is not necessary that we should enter at large into the consideration of the nature of the estate which the heir takes ; it may not, however, be improper to say that the case of *Rogers* v. *Ross*, 4 Johns. Ch. R. 388, is a strong authority to show that she takes as a *trustee*, and not in her own right. It is not reasonable to conclude that the testator intended to produce such a result ; but we cannot avoid coming to it, if we look to the language he has employed, and apply to it the established rules of law.

From the examination of the plaintiff's points, it appears that he does not press his claim to more than two third parts of the premises. To this extent he is entitled to recover. We do not mean to intimate an opinion, that had he insisted on more, judgment for more would have been given. Our impressions, are strongly to the contrary.

Judgment for plaintiff, for two thirds of the premises.