Tayloe *v.* Gould.

---

SAME TERM. *Before the same Justices.*

TAYLOE *vs.* GOULD, executor, &c. and others.

A testator, by his will executed since the revised statutes went into operation, devised as follows: "Fourthly. I do give, devise and bequeath to my beloved daughter, Julia Maria, the wife of B. O. T., and such her child or children as shall at her decease be living, and shall have attained, or shall thereafter attain, the age of twenty-one years, all and singular the rest and residue of my real and personal estate and property of every description, of which I may die seised and possessed, or entitled unto, and the reversion and reversions, remainder and remainders, rents, issues, and profits

Tayloe *v.* Gould.

thereof, to and for her sole and separate use, to all intents and purposes as though she were a feme sole and unmarried.

*Held* 1. That the words " and such her child or children," &c. were words of *purchase,* and not of *limitation,* and that if not contrary to the statute against perpetuities, Mrs. T. took only a life estate, with remainder to such of her children as should survive her, and should have attained, or should after her decease attain, the age of twenty-one years.

2. That such remainder to the children was not vested, but contingent.

3. That assuming such contingent remainder to be valid, the property, intermediate the death of Mrs. T., and the time when her eldest child became of age, descended to, and vested in, the heirs at law, liable to be divested on the happening of the contingency upon which the remainder depended.

4. That when that contingency occurred by the eldest son becoming of age, the remainder vested in him, subject to be divested, so far as to let in, to their shares respectively, such of the other children of Mrs. T. as should become 21 years of age.

5. That the estate being limited on Mrs. T.'s life and five minorities, and being inalienable during such limitation, the contingent remainder to the children of Mrs. T. was void, as being contrary to the statute against perpetuities. And that the legal consequence was that as to the moiety of the estate thus disposed of, it descended to Mrs. T. as the heir at law of the testator, and united with her life estate.

6. That the devise was not a joint devise to Mrs. T. and her children.

7. That the devise over was equally void as to the personal estate.

By the third clause of the same will one moiety of the testator's estate was devised to his wife for life, and by the third devise of the fourth clause was disposed of as follows: " But in case my said wife A. E. shall be living at the time of my death, and shall die, my said daughter J. M. surviving, or any of her my said daughter's children who shall have attained or shall thereafter attain, the age of twenty-one years, surviving my said wife, I do then and in such case give, devise and bequeath to my said daughter, J. M., if living at the time of the death of my said wife, or in case of her death then to such her child or children as shall be living at the time of the death of my said wife, or at the death of my said daughter, and shall then have " attained, or shall thereafter attain, the age of 21 years, her, his, or their heirs and assigns, all and singular the real and personal property herein before devised to my said wife for and during her natural life." *Held* that this devise was also void, both as to the real and personal estate, as contrary to the statute prohibiting perpetuities; being a limitation for two lives, not only, but also for five minorities in addition, and that the objection to its validity was not obviated by the fact of Mrs. T. dying before the testator's widow.

The validity of a devise must be determined from its terms, and without reference to future contingencies.

To entitle a husband to an estate as tenant by the curtesy, the wife must be

seised in fact, and in deed. It is not sufficient that she has a seisin in law of an estate of inheritance.

Hence, if there be an outstanding estate for life, the husband can not be tenant by the curtesy of the wife's estate ·in reversion or remainder, unless the particular estate be ended during the coverture.

There can be no seisin in fact of a vested remainder limited on a precedent freehold estate.

Where a life estate, and the immediate reversion, meet in the same person, the particular estate is merged in the greater estate. And if the two estates unite in a feme covert, her husband is entitled to a life estate as tenant by the curtesy.

A limitation upon minorities is virtually a limitation upon lives

IN EQUITY. John D. Dickinson died at the city of Troy· on the 28th January, 1841, leaving a large real and personal estate, and leaving a last will and testament which he had duly executed on the 2d of October, 1838.

By the first clause of his will the testator directed all his debts to be paid out of his personal estate and the rents and income of his real estate.

By the second clause he devised and bequeathed to his wife Ann Eliza, if living at the time of his death, for and during her natural life, his dwelling house in which he resided, and all the goods, household furniture, plated ware and silver plate, &c. &c. in and belonging to his said dwelling house and establishment, and all his carriages, horses, &c. &c. All the personal property was bequeathed to his wife absolutely, except the plated ware and silver plate, which was bequeathed to her during widowhood.

By the third clause, he devised and bequeathed to his said wife, if living at the time of his death, the one equal moiety of all the residue of his personal estate, and the rents, issues and profits during her life, of the equal undivided moiety of the residue of his real estate, in lieu of dower.

The fourth clause was in the following words :

" *Fourthly.* I do give, devise, and bequeath, to my beloved daughter, Julia Maria, the wife of Benjamin Ogle Tayloe, and such her child or children, as shall at her decease be living, and shall have attained, or shall thereafter attain the age of twenty-

Tayloe *v.* Gould.

one years, all and singular the rest and residue of my real and personal estate and property of every description of which I may die seised or possessed, or entitled unto; and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, to and for her sole and separate use, to all intents and purposes, as though she were a feme sole, and unmarried; but in case my said wife shall die before my decease, I do then and in such case give, devise and bequeath, all and singular, my real and personal estate and property, and the rents, issues and profits thereof, hereinbefore devised to my said wife, to my said daughter Julia Maria, and such her child or children, as shall at her decease be living, and shall have attained, or shall thereafter attain the age of twenty-one years, to and for her sole and their sole and separate use, as fully and absolutely as though she, my said daughter, were a feme sole and unmarried. But in case my said daughter Julia Maria shall die, my said wife surviving her, not leaving any lawful issue, child or children, who shall have attained, or shall thereafter live and attain the age of twenty-one years, and not leaving lawful issue living at the time of his, her or their death or deaths, I do then and in such case give, devise and bequeath, all and singular, the real and personal estate hereinbefore devised to my said daughter, to my beloved wife Ann Eliza, and to her heirs and assigns forever. But in case my said wife Ann Eliza shall be living at the time of my death and shall die, my said daughter Julia Maria surviving, or any of her my said daughter's children who shall have attained or shall thereafter attain the age of twenty-one years surviving my said wife, I do then and in such case give, devise and bequeath, to my said daughter Julia Maria, if living at the time of the death of my said wife, or in case of her death, then to such her child or children as shall be living at the time of the death of my said wife, or at the death of my said daughter, and shall have then attained, or shall thereafter attain the age of twenty-one years, her, his, or their heirs and assigns, all and singular, the real and personal property hereinbefore devised to my said wife, for and during her natural life; but in case my said daughter shall not be liv-

ing at the time of the death of my said wife, and shall not have left any child or children, or the lawful issue of any child or children living, who shall then or shall thereafter attain the age of twenty-one years, I do then and in such case give, devise, and bequeath, all and singular the real and personal estate, last aforesaid, to such person or persons as may be entitled to the same as my heirs at law.

I do hereby constitute and appoint my beloved wife, Ann Eliza, executrix, and my son-in-law, Benjamin Ogle Tayloe, my much esteemed friends, Daniel D. Barnard, of the city of Albany, Esquire, Alanson Douglass and George Gould, Esquires, of the city of Troy, executors of this my last will and testament. And I do hereby authorize and empower my said executrix and executors, and the survivors and survivor of them, to sell and dispose of any part of my real estate, (excepting my dwelling house with the lot and appurtenances thereto belonging, hereinbefore devised to my said wife for and during her natural life,) or in their discretion to lease the same or any part thereof, in fee, or for a term or terms of years, reserving thereon a reasonable and proper rent, my said executrix while living, in all cases of sale or other disposition of my said real estate, first assenting to and approving thereof."

The testator left surviving him his widow Ann Eliza, his said daughter Julia Maria D. Tayloe, his only child, and five grandchildren, the children of his said daughter and her husband Benjamin Ogle Tayloe, to wit, John Dickinson Tayloe, then aged fourteen years, Edmund Thornton Tayloe, aged eleven years, Estelle Frances Tayloe, aged seven years, Phebe Warren Tayloe, aged five years, and Julia Dickinson Tayloe, aged two years. Julia Maria D. Tayloe, the daughter of the testator, died at the city of Washington, in July, 1846, leaving her surviving her said five and no other children, and her said mother. Ann Eliza, the widow of the testator, died on the 12th of January, 1847, leaving her surviving the said five children of her said daughter Julia Maria D. Tayloe, none of whom had then attained the age of 21 years. The will was duly proved and recorded as a will of real and personal estate, on the 18th day of February, 1841, and let-

ters testamentary were issued thereon to the said widow Ann Eliza Dickinson, the defendant George Gould, and the complainant. John Dickinson Tayloe became 21 years of age on the 22d of May, 1847.

The complainant filed his bill in equity in this court in April, 1848, and claimed, 1st. That as husband of the daughter of the testator he was entitled, from the time of the decease of the testator to the time of the decease of his said widow Ann Eliza Dickinson, to the rents and profits of one undivided half part of all the real estate of which the testator died seised, except that part of which the exclusive use and enjoyment was devised to the wife of the testator for life. 2. That since the death of the said Ann Eliza Dickinson he has been and is entitled to the rents and profits of all the real estate of which the testator died seised. 3. That as husband of the said daughter of the testator or as her administrator, he is entitled to one undivided half of all the personal estate of which the testator died possessed, except those articles which were specifically devised to the wife of the testator absolutely.

The facts above stated appearing on bill and answers and proofs taken, the infants having appeared and put in general answers by guardian, an order was entered that the cause be heard at general term.

*D. D. Barnard,* for the complainant.

*S. Stevens,* for George Gould and the infant defendants.

*By the Court,* PARKER, J. The first question to be determined is, what estate Mrs. Tayloe took under the following language of the will : " Fourthly, I do give, devise and bequeath to my beloved daughter Julia Maria, the wife of Benjamin Ogle Tayloe, *and such her child or children as shall at her decease be living and shall have attained, or shall thereafter attain the age of twenty-one years,* all and singular the rest and residue of my real and personal estate and property of every description of which I may die seised and possessed, or entitled unto, and

Tayloe *v.* Gould.

the reversion and reversions, remainder and remainders, rents, issues and profits thereof, to and for her sole and separate use, to all intents and purposes as though she were a feme sole and unmarried."

The plaintiff claims that the words "and such her child or children," &c. are words of *limitation,* and that under this devise Mrs. *Tayloe* took an estate in fee.   On the other hand, the defendants contend that the words above quoted are words of *purchase,* giving a remainder to the persons described, and that Mrs. Tayloe took only a life estate.

The rule in *Shelley's case,* (1 *Coke's Rep.* 104,) which prevailed in the courts for so long a time, against the manifest intention of the testator, has been abolished in this state, by the revised statutes, (1 *R. S.* 725, § 28,) which provide, that where a remainder shall be limited to the heirs or heirs of the body of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heirs or heirs of the body of such tenant for life, shall be entitled to take as purchasers, by virtue of the remainder so limited to them.   Before the enacting of this statute the general rule was, that when a person took an estate of freehold under a deed, will or other writing, and in the same instrument there was a limitation by way of remainder to his heirs or the heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitled the ancestor to the whole estate. (1 *Prest. on Est.* 263, 419. 4 *Kent's Com.* 215, 2d ed.)   But even then, if the testator annexed words of explanation to the word "heirs," as to the heirs of A. *now living,* showing thereby that he meant by the word heirs a mere *descriptio personarum,* or specific designation of certain individuals, it was to be regarded as a word of purchase. (*Burchett* v. *Durdant,* 2 *Vent.* 311; *Carth.* 154, *S. C.* 4 *Kent's Com.* 221.)   Mr. Hargrave, (*Har. Law Tracts,* 489,) gave to the rule an absolute application where the testator did not intend to break in upon and disturb the line of descent from the ancestor, but used the word "heirs" as a *nomen collectivum* for the whole line of inheritable blood.   But the rule was never applicable

Tayloe *v.* Gould.

when there was a distributive direction given, incompatible with the ordinary course of descent. (4 *Kent's Com.* 230.)

It seems to me very plain that the words in the will under consideration, tested even by the rigid rule as it stood before the adoption of the revised statutes, would be regarded as words of purchase, and not words of limitation.

It was the intention of the statute to abolish entirely the rule in *Shelley's case,* (*Rev. notes,* 2 *R. S. 2d ed.* 575.) It was only where the words "heirs" or "heirs of the body" were used, that the technical language employed necessarily defeated the obvious intent of the testator, and therefore the statute provides only for cases of that character. Where other words were employed by the testator, though of similar meaning, their construction was governed by the intention of the testator as gathered from the whole instrument and the facts of the case. The word "issue" may be a word of purchase or of limitation, as will best suit the intention of the testator. (8 *Petersd. Abr.* 186, *and cases there cited.* 5 *T. R.* 308. 1 *Lord Raym.* 207.) Chancellor Walworth says, in *Schoonmaker* v. *Sheely,* (3 *Denio,* 490,) "the word children, in its primary and natural sense, is always a word of purchase and not a word of limitation; and the word issue is very frequently a word of purchase also. But heirs and heirs of the body are, in their primary and natural sense, words of limitation and not of purchase." The devise in this case is not to those who would take as a class, by descent, but to such of them as should be living at the death of their mother, and as should have attained or should thereafter attain the age of twenty-one years. It is only a description of the persons succeeding to the estate.

I think it is apparent from the clause under consideration, as well as from the whole will and the circumstances surrounding the testator at the time of its execution, that he intended only a life estate for Mrs. Tayloe, with remainder to such of her children as should survive her and should have attained or should after her decease attain the age of twenty-one years. The words used are in their usual sense words of purchase and not of limitation. The testator intended to give the property to a part only of Mrs. Tayloe's children, viz. to such as should survive her,

and should become of full age. He devised the property to Mrs. Tayloe's sole and separate use. She was evidently to have the use of it for life, for it was only given to such as should survive her.

Was the remainder to the children vested or contingent? The statute has provided the definition of these words by which we are to be governed. Estates are *vested* when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are *contingent* whilst the person to whom, or the event upon which, they are limited to take effect, remains uncertain. (1 *R. S.* 723, § 13. *Hawley* v. *James,* 5 *Paige,* 466.) Although the five children of Mrs. Tayloe were in being at the time of the death of the testator, yet none of them would have had an immediate right to the possession of the lands on the termination of Mrs. Tayloe's life estate. That right depended on the additional contingency of their arriving at twenty-one years of age. In the language of the statute, the event upon which it was limited to take effect remained uncertain. The estate did not vest in the children on the death of the testator. It went only to those who survived their mother and became of age. If one of them became twenty-one years of age, he would still have no title unless he was living at the decease of his mother; and if after attaining twenty-one years of age he married and died before his mother, leaving issue, his issue could not inherit. The remainder to the children was not therefore vested, but contingent.

Assuming this contingent remainder to be valid, it may be asked where did the estate vest intermediate the death of Mrs. Tayloe, and the time when her eldest son became of age? that is to say, from July, 1846, till the 2d May, 1847. If this is not provided for in the will, the property descended in the mean time to the heirs at law, liable to be divested on the happening of the contingency upon which the remainder depended. In a subsequent part of the will it is provided that if Mrs. Tayloe shall die, the testator's wife surviving, and shall not leave any lawful issue, child or children, who shall have attained or shall thereafter attain the age of 21 years, &c. the property shall go·

Tayloe v. Gould.

to his wife and to her heirs and assigns forever.　If this devise is valid, and if it was vested under the definition above given, the property, after the death of Mrs. Tayloe, vested in her mother, Mrs. Dickinson, liable to be divested on the contingency of Mrs. Tayloe's children, or any one of them, attaining the age of 21 years, and continued thus in Mrs. Dickinson till her death on the 12th January, 1847, when it vested in the heirs at law, viz.: in all the children of Mrs. Tayloe, subject to be de-feated by the same contingency.　That when that contingency occurred on the 22d May, 1847, by John D. Tayloe becoming of age, the remainder vested in him subject to be divested so far as to let in, to their shares respectively, such of the other children of Mrs. Tayloe as should become 21 years of age. But it is unnecessary to decide whether the estate, after the death of Mrs. Tayloe vested in Mrs. Dickinson till her death, or whether it vested in the heirs of the testator during the whole time from the death of Mrs. Tayloe, till her eldest son became of age.　It is well settled that when no provision is made in the will, the property descends to the heir at law until the vesting of the contingent estate.　(*Jackson* v. *Winne*, 7 *Wend.* 47.)

I have thus far examined the interests of the parties as they apparently exist according to the terms of the will.　But it is insisted that the future contingent devise to the children is void on the ground that it violates the statute against perpetuities. The revised statutes (1 *R. S.* 723, § 14,) declare every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is pre-scribed in that article; and further declares such power of alienation suspended, when there are no persons in being, by whom an absolute fee in possession can be conveyed.　The next section provides that the absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate.

Here was a devise to Mrs. Tayloe for life, remainder to such of her children as should be living at her death and should

then be, or should thereafter become 21 years of age ; and though no more should be afterwards born, the estate might remain contingent until the expiration of the minority of the youngest child.   The estate was thus limited on Mrs. Tayloe's life and five minorities, and during such limitation the estate was inalienable.   It is unnecessary to discuss the construction of the statute prohibiting perpetuities.   This has been very elaborately performed and the rule established in several reported cases.   The limitation must be measured by lives only or by some term that can not exceed the measure of two lives in being. (*Hawley* v. *James*, 16 *Wend.* 61.   *Gott* v. *Cook*, 7 *Paige*, 521. *S. C.* 24 *Wend.* 641.   14 *Id.* 265.   18 *Id.* 257.   1 *Barb. Ch. Rep.* 18.)

In *Hawley* v. *James*, the court for the correction of errors decided that a limitation " until the youngest of a testator's children and grandchildren, attaining the age of twenty-one years, shall have attained that age," when the number exceeds *two*, is void as suspending the power of alienation of an absolute fee in possession for more than two lives in being.   The principle decided in *Hawley* v. *James* is precisely applicable to the case now before us, and *it is only* necessary to refer to it to show that the remainder to the children of Mrs. Tayloe is a violation of the statute. A limitation upon minorities is virtually a limitation upon lives. If two of the lives terminate before all attain majority, then the estate having been held for two lives, its further continuance during the residue of the minorities extends it beyond two lives, and the whole limitation is void.   It is no answer to say that the estate might terminate during the life of Mrs. Tayloe, by the death of all of her children.   The possibility that the estate may extend beyond the limits allowed, vitiates it *ab initio*.   (16 *Wend.* 121.   4 *Cruise*, 449.   4 *Kent*, 283.   2 *Burr*. 873.)   The estate must by the terms of its creation be restricted within the required limit, or it is void.   There is no exception to the rule established by § 14 and § 15 of the statute, except that stated in § 16, and that is inapplicable to this case.

I am clearly of the opinion therefore that the contingent remainder to the children of Mrs. Tayloe is void.   The legal

Tayloe *v.* Gould.

consequence is that as to the moiety of the estate thus disposed of, it descended to Mrs. Tayloe as heir at law of the testator and united with her life estate.

It was suggested on the argument that the devise we have been considering might be a joint devise to Mrs. Tayloe and her children. (*Oules* v. *Jackson*, 2 *Strange*, 172.   *Co. Litt.* 9, 188. *Pollexf.* 373.)   But there is nothing in the language employed to require such a construction, and I have already stated several reasons why I think it was not so intended.   I do not see how Mrs. Tayloe could take jointly with her children, when the property could not vest in the children till after her death.   Other provisions in the will show that it was not the intention of the testator to devise property jointly to Mrs. Tayloe and her children. In the third devise of the fourth clause, the moiety devised for life to Mrs. Dickinson, was given after her death to Mrs. Tayloe, if living, and if not then to the same children designated as in the other devise.   But if the devise was joint, the power of alienation was suspended for the same length of time as if the devise was to Mrs. Tayloe for life, remainder to the children; because, if the devise was joint, the extent of interest in such of the devisees would be changing and contingent, until the youngest child should have become of age.   The absolute power of alienation would be therefore suspended for a longer time than is allowed by statute, and the devise consequently void, so that the property would, as in the other case, descend to Mrs. Tayloe as heir at law.

I proceed next to consider the other moiety of the estate. This by the third clause of the will was devised to Mrs. Dickinson for life, and by the third devise of the fourth clause was disposed of as follows : " But in case my said wife, Ann Eliza, shall be living at the time of my death and shall die, my said daughter Julia Maria surviving, or any of her my said daughter's children who shall have attained or shall thereafter attain the age of twenty-one years, surviving my said wife, I do then and in such case give, devise and bequeath to my said daughter Julia Maria, if living at the time of the death of my said wife, or in case of her death, then to such her child or children as shall be

Tayloe *v.* Gould.

living at the time of the death of my said wife, or at the death of my said daughter, and shall then have attained or shall thereafter attain, the age of twenty-one years, her, his or their heirs and assigns, all and singular the real and personal property hereinbefore devised to my said wife for and during her natural life."

This is still more plainly, if possible, a violation of the statute prohibiting perpetuities. It is a devise for life to Mrs. Dickinson, then to her daughter Mrs. Tayloe, and then remainder to such of the children of the latter as should attain majority. It is a limitation for two lives not only, but also for five minorities in addition. In other words it is a limitation for seven lives. It is no answer to say that Mrs. Tayloe died before Mrs. Dickinson. It might have been otherwise; and the validity of the devise must be determined from its terms, and without reference to future contingencies. But if this devise be regarded only as a limitation for life to Mrs. Dickinson with remainder to such of the children of Mrs. Tayloe as should attain majority, it is still void for the reasons above stated in considering the first devise of the fourth clause. Then both devises would stand upon the same footing. The consequence is that this moiety also of the estate, at the death of the testator descended to Mrs. Tayloe as heir at law, subject to the life estate of Mrs. Dickinson.

The plaintiff claims that as husband of Mrs. Tayloe he is entitled to a life estate, as tenant by the curtesy, in all the real estate left by the testator. Four things are requisite to an estate by the curtesy, viz. marriage, actual seisin of the wife, issue and death of the wife. The only question here is whether there was such a seisin of the wife as will support the plaintiff's claim.

I have already shown that one moiety of the real estate was devised to Mrs. Dickinson for life, and the remainders being void, it descended to Mrs. Tayloe as sole heir at law, subject to such life estate. Mrs. Tayloe died before the termination of the life estate. To entitle the husband to his curtesy, the wife must be seised in fact and in deed; it is not sufficient that she has a seisin in law of an estate of inheritance. (4 *Kent's Com.* 29. *Jackson* v. *Johnson*, 5 *Cowen*, 74, 98. *Bates* v. *Shraeder*, 13

Tayloe v. Gould.

*John.* 260.  *Jackson* v. *Hilton*, 16 *Id.* 96.)  It has been accordingly held that if there be an outstanding estate for life, the husband can not be tenant by the curtesy of the wife's estate in reversion or remainder, unless the particular estate be ended during the coverture.  (*Co. Litt.* 29 *a.  De Grey* v. *Richardson*, 3 *Atk.* 469.  4 *Kent's Com.* 29.)  There can be no seisin in fact of a vested remainder limited on a precedent freehold estate.  (1 *Co. Litt.* 32 *a.  Cruise's Dig.* ch. 2, tit. *Dower*, §§ 12 *to* 16.  *Blood* v. *Blood*, 23 *Pick.* 80.  7 *Mass. Rep.* 253. 8 *N. Hamp. R.* 240.  5 *Id.* 469.  *Green* v. *Putnam*, 1 *Barb. Sup. C. Rep.* 506.  *Dunham* v. *Osborn*, 1 *Paige*, 634.  *Reynolds* v. *Reynolds*, 5 *Id.* 161.  *Matter of Cregier*, 1 *Barb. Ch. Rep.* 598.)  In the last cited case the chancellor reviewed the case of *Bear* v. *Snyder*, 11 *Wend.* 592,) where a different opinion had been held.

As to the moiety of the real estate, therefore, which was devised to Mrs. Dickinson for life, the life estate not having ended till after the coverture was terminated by the death of Mrs. Tayloe, the plaintiff is not tenant by the curtesy; but the children of Mrs. Tayloe take it, free from such incumbrance.

With regard to the other moiety of the real estate left by the testator, Mrs. Tayloe was seised in fact of it during the coverture.  The life estate devised to her by the testator was merged in the greater estate which she took as heir at law.  Such is the legal effect of the uniting of the particular estate and the immediate reversion in the same person.  (4 *Kent's Com.* 99. 100. 3 *Preston on Cont.* 182, 261.)  The plaintiff has therefore a life estate as tenant by the curtesy in that moiety of the real estate.

The devises over are equally void as to the personal property. The absolute ownership of personal property can not be suspended by any limitation or condition whatever for a longer period than during the continuance and until the termination of not more than two lives in being at the death of the testator. (1 *R. S.* 773, §§ 1 2.  *Rathbone* v. *Dyckman*, 3 *Paige*, 30. *Hannan* v. *Osborn*, 4 *Id.* 342.)  The plaintiff, therefore, as administrator of his wife, is entitled to one-half of the personal estate from the time of the death of his wife.  (2 *R. S.* 75, § 23.

*Id.* 98, § 79. 2 *Kent's Com.* 135. 6 *John.* 112. 7 *John. Ch.* 229.) The plaintiff is entitled to an account of all the personal property to which his wife was entitled as next of kin of the testator.

There must therefore be a decree declaring and adjudging the rights of the parties in accordance with the above conclusions, and providing for a reference to take and state the account; all further questions are reserved until the coming in of the referee's report.

SAME TERM.    *Watson, Parker, and Wright*, Justices.