(88 Misc. Rep. 300)

### BARKER v. BARKER et al.

(Supreme Court, Trial Term, Kings County. December, 1914.)

1. MARRIAGE (§ 47*)—VALIDITY—EVIDENCE—INTENT.

Where a ceremonial marriage is performed in good faith by a minister, and the spouses had duly signed a certificate, to be filed with the board of health, which certificate was signed by the minister and two witnesses, neither of whom impeached the marriage, the declaration of the wife that she had no intention to enter upon matrimonial relations is inadmissible to impeach the marriage.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 75; Dec. Dig. § 47.*]

2. MARRIAGE (§§ 1, 23*)—"CONTRACT OF MARRIAGE."

The "contract of marriage" is something more than a mere civil agreement between the parties, the existence of which affects only themselves; and a ceremonial marriage cannot be avoided by a secret reservation of one of the parties.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 1, 17; Dec. Dig. §§ 1, 23.*

For other definitions, see Words and Phrases, First and Second Series, Contract of Marriage.]

Action by Charles V. Barker against Frances E. Barker and others. On motion for new trial after verdict directed on an issue framed at Special Term for trial by jury. Motion denied.

Robert H. Elder, of New York City, and Robert H. Haskell, of Brooklyn, for the motion.

Hugo Hirsh and Andrew F. Van Thun, Jr., both of Brooklyn, Charles L. Craig, of New York City, and William A. Kirk, of East Orange, N. J., opposed.

KAPPER, J. In this action for partition, the Special Term framed an issue for trial by jury involving the legitimacy of the child of Charles Barker, deceased, who claims to inherit the latter's share in the property sought to be partitioned.

Barker married June 28, 1897. A prior marriage said to have taken place May 1, 1897, between Barker's wife and one Alphonsus Murtha was asserted to prevent the child from inheriting. The question before the jury was whether this woman married Murtha on the 1st day of May, 1897. On that date she and Murtha, with two witnesses, appeared before a minister of the gospel and were apparently married. A record of the marriage was made in the church register, and the certificate required to be filed with the board of health was duly filled out and signed by the minister, by Murtha, by the woman, and by the two witnesses. One of these witnesses testified upon the trial. The other witness was missing, and his whereabouts was not accounted for, at the trial.

Upon its face the marriage appeared to have been solemnized in good faith, and it is conceded that, so far as concerns the minister's performance of the ceremony, the same was in good faith. Murtha, whose examination was taken by deposition in the state of New Jersey, after testifying to his participation in the marriage ceremony,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sought to add that he "didn't think it was a legal marriage," as the ceremony was not in accord with his religious faith. This answer, upon the trial, was stricken out, against the objection and exception of counsel for the child.

[1] Evidence was sought to be elicited from the woman to the effect that she had no "intention to enter upon matrimonial relations with Murtha," and this question was in substance repeated in various forms, all tending toward the same proposition, namely, whether or not there was *reserved in the minds of the parties to the ceremony* a lack of intention to marry. All of such proposed evidence was excluded, and a verdict was directed that the jury answer "Yes" to the question stated. Murtha and his spouse do not appear to have cohabited together after the ceremony, and, as stated, about two months thereafter she married Barker, the fruits of which unfortunate step resulted in the birth of the child whose status is the subject of this litigation. Motion is now made to set aside the verdict so directed and for a new trial for error in the exclusion of evidence of the purposes of the parties to said ceremony as to whether or not they meant to marry or intended marriage.

I am of the opinion that the evidence was properly excluded, and that the motion should be denied. I adhere to the view that a ceremonial marriage performed in good faith by a minister of the gospel, where the spouses have duly signed the certificate required by law to be filed with the board of health, and which was in turn signed by the minister and two witnesses, neither of whom impeaches the marriage, cannot be invalidated by the declaration of either party that he or she did not mean to become married. It is argued that marriage is a civil contract, which must be evidenced by intention, and that where the question of intent is in issue it is a fact which may be testified to as any other fact. Usually, what a party intends is inferred from his or her acts, and where the act is plain and unequivocal, especially in matters of contract or mutual understanding, a party cannot avoid the effect of it by any mental reservation or secret intention. Davis v. Davis, 7 Daly, 314. Granting that in some civil actions parties have been permitted to speak as to their mental operations in the doing of an act which is called in question, where the intent with which it is done deserves to characterize it, that rule cannot apply to the marriage contract ceremoniously performed.

[2] The contract of marriage is something more than a mere civil agreement between the parties, the existence of which affects only themselves. It is the basis of the family, and its dissolution as well as its formation is matter of public policy, in which the body of the community is deeply interested, and it is to be governed by other considerations than those which obtain with regard to any ordinary civil contract inter partes. Fisk v. Fisk, 6 App. Div. 434, 39 N. Y. Supp. 537. And so it was said in the case cited, where it was sought to annul a marriage for fraud, that:

"The fraud which will induce the court to set aside a contract of marriage is something different from the fraud which will induce the court to set aside an ordinary contract which has been executed, or even a contract which is still executory."

In Maynard v. Hill, 125 U. S. 210, 8 Sup. Ct. 729, 31 L. Ed. 654, the court say:

"It is also to be observed that, whilst marriage is often termed by text-writers and in decisions of courts a civil contract—generally to indicate that it must be founded upon the agreement of the parties, and does not require any religious ceremony for its solemnization—it is something more than a mere contract. The consent of the parties is, of course, essential to its existence; but, when the contract to marry is executed by the marriage, a relation between the parties is created which they cannot change. Other contracts may be modified, restricted, or enlarged, or entirely released, upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress."

While the question does not seem to have been squarely presented upon a like state of facts in any jurisdiction, so far as the research of counsel and court has disclosed, expressions supporting the conclusion reached upon the trial are found in Davis v. Davis, supra, and Jackson v. Winne, 7 Wend. 47, 51, 22. Am. Dec. 563, in which it was said that, in order to ascertain whether a valid marriage was "actually solemnized," the courts are to look at the situation of the parties before the officer performing the ceremony "and what took place on that occasion," and that the court, "in deciding upon the sufficiency of the assent of the parties, can regard only what takes place at the ceremony." In Barnett v. Kimmell, 35 Pa. 13, it was said, in effect, that a ceremonial marriage cannot be avoided by a secret reservation of one of the parties; and in Franklin v. Franklin, 154 Mass. 515, 28 N. E. 681, 13 L. R. A. 843, 26 Am. St. Rep. 266, that:

"It is against the policy of the law that the validity of a contract of marriage, or its effect upon the status of the parties, should be in any way affected by their preliminary or collateral agreements."

The motion for a new trial is denied.
Motion denied.