# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### CANFIELD et al. v. CANFIELD.

(Circuit Court of Appeals, Sixth Circuit.   October 7, 1902.)

#### No. 1,043.

1. **WILLS—RULES OF CONSTRUCTION.**

     The construction of a will being for the purpose of ascertaining the intention of the testator, the language used must be read in the light of the circumstances of the particular case.

2. **SAME—PRESUMPTION AGAINST PARTIAL INTESTACY.**

     A testator, having his attention upon his entire estate, will not be presumed, in the absence of a clear expression to the contrary, to die intestate as to any part of it.

3. **SAME—TESTAMENTARY TRUST—VESTING OF ESTATE IN BENEFICIARY.**

     A testator, who was a young man, unmarried, and possessed of a considerable estate, had no near relatives except a younger brother, not then of age, who had become somewhat dissipated.   After making minor bequests, he devised and bequeathed all the residue of his estate to an uncle "in trust for the use and benefit of my brother."   The will provided that the uncle should control and manage the property, paying to the testator's brother such sums from time to time as he should deem best, until the latter became of age, when, if "my said uncle shall think it best, in his judgment and discretion, to pay over and deliver to my said brother all my bequests to my brother, * * * I hereby authorize and direct him to do so."   If the uncle did not then think it best to turn over the property, he was to continue to manage and control it until such time as, in his judgment and discretion, he should "deem it prudent and proper to put the same under the management and control of my said brother."   No provision was made for disposition of the property in the contingency of its not being turned over to the testator's brother.   *Held* that, reading the will in the light of the existing circumstances, it was clearly the intention of the testator to vest the estate in his brother, subject to the right of the trustee, under the discretion given, to withhold the use and enjoyment of it, and that on the death of the brother the property, which had not been turned over to him, vested in his heirs, and did not revert to the estate of the testator.

4. **SAME—EFFECT OF STATUTE ON CONSTRUCTION.**

     2 Comp. Laws Mich. 1871, §§ 4129, 4131, which provide that a trust estate shall vest in the trustee, leaving to the beneficiary only the right to enforce the trust, and that the estate and interest not included in the trust on the termination thereof vest in the person creating the same,

118 F.—1

or his heirs, cannot operate to enlarge the estate in a trustee under a testamentary trust beyond that intended by the testator, as determined from a proper construction of the will itself.

5. JURISDICTION OF PROBATE COURTS—MICHIGAN STATUTES—SETTLEMENT OF TRUST ESTATES.

The jurisdiction conferred on the probate courts by the statutes of Michigan to settle estates, and distribute the funds thereof in the hands of an executor, does not extend to the settlement of the accounts of a trustee under a will, and the distribution of the trust fund on the termination of the trust, which jurisdiction belongs to a court of chancery; and where an executor paid all the debts and specific bequests of his testator, leaving in his hands only the residuary estate, of which he was made trustee under the will, but neglected for many years, and until after the death of the cestui que trust, to settle his accounts as executor when he filed his report, including therein the trust property, a decree of the probate court made thereon, distributing the trust property and funds as property of the estate, is void as against an heir of the cestui que trust who was the real owner of the property, but who, although known to the executor, was not made a party to the proceedings, and whose rights were not considered or adjudicated.

6. TRUST—ACCOUNTING BY TRUSTEE—INTEREST.

A trustee, not shown to have wasted the estate or to have derived a profit therefrom, should be charged only with simple interest at the legal rate on funds remaining in his hands from time to time uninvested.

7. SAME—LIABILITY OF TRUSTEE FOR CONVERSION—UNAUTHORIZED CONVEYANCE OF REAL ESTATE.

Where a trustee under a will undertook to convey real estate to which he had no title, as appeared from the will and proceedings thereon, which were matters of record, but it did not appear that he acted fraudulently, having made the conveyances without receiving any payment therefor, pursuant to a decree of distribution made by the probate court, which was, however, void as against the real owner for want of jurisdiction, he should not be charged, in favor of such owner, with the value of the real estate, as for a conversion, unless it should be determined in litigation instituted for the purpose that the lands are not recoverable.

8. JUDGMENT—ALLOWANCE BY PROBATE COURT TO EXECUTOR—COLLATERAL REVIEW.

An allowance of a lump sum made by a probate court to an executor and trustee under a will as compensation for his services rendered in both capacities cannot be set aside in a collateral proceeding, although the court was without jurisdiction to allow compensation for the services as trustee.

Cross-Appeals from the Circuit Court of the United States for the Western District of Michigan.

A. J. Dovel and Benton Hanchett, for appellants.

Jackson B. Kemper, for appellee.

Before LURTON and DAY, Circuit Judges, and SWAN, District Judge.

DAY, Circuit Judge. This was a bill for an accounting against John Canfield, who died pending the action, for moneys and property alleged to be in his hands as trustee of Edward W. Canfield, deceased, belonging to Hattie H. Canfield, the complainant. The case

¶ 5. Probate jurisdiction, see note to Quarries Co. v. Thomlinson, 36 C. C. A. 276.

turns principally on the proper construction to be given the will of Henry R. Canfield, who died at Racine, Wis., September 3, 1871. The will was probated in the probate court of Manistee county, Mich., where the deceased had left very considerable property interests. After giving $5,000 to his aunt Clara E. Marsh, $1,000 to Cyrus W. Babcock, a friend, his interest in his father's homestead to his stepmother for life, and a watch to his brother in case he had none, the testator, in the sixth clause of his will, disposes of all the rest of his estate as follows (sixth):

"All the rest and residue of my estate, real and personal, I give and bequeath to my uncle, John Canfield, in trust for the use and benefit of my brother, Edward W. Canfield, and leave the management and control of the property hereby given under the sixth bequest of this, my last will and testament, to my said uncle, John Canfield, in trust for the use and benefit of my brother, Edward W. Canfield, according to the best judgment and discretion of my said uncle, John Canfield, and that my said uncle shall pay to my said brother such sums of money from time to time as my said uncle shall, in his judgment and discretion, deem best; and also, when my said brother shall arrive at his majority (that is, shall arrive at the age of twenty-one years), and my said uncle shall think it best, in his judgment and discretion, to pay over and deliver to my said brother all my bequests to my brother, Edward W. Canfield, I hereby authorize and direct him to do so. But it is expressly my will and earnest desire that my said uncle will exercise a sound discretion and judgment in paying over any money or conveying to my said brother any real estate to my said brother, under the sixth bequest of this my last will and testament, and expressly request my said uncle not to do so until my said brother shall, in his (my said uncle's) discretion and judgment, be satisfied that my said brother will manage and make prudent use of the same. And in case my said brother, Edward W. Canfield, shall become dissipated, or in any manner and from any cause, in the judgment and discretion of my said uncle, John Canfield, unfit to hold, control, or manage any of the property, real or personal, lying and bequeathed, under the sixth provision of this my last will and testament, in trust to my said uncle, John Canfield, for the use and benefit of my said brother, Edward, then I do authorize and direct my said uncle, John Canfield, to hold, manage, and control all the real and personal estate given and bequeathed under the sixth provision of this, my last will and testament, till such time as, in the judgment and discretion of my said uncle, John Canfield, may deem it prudent and proper to put the same under the management and control of my said brother, Edward W. Canfield, and not till then."

The testator, Henry R. Canfield, and Edward W. Canfield were the sons of Edmund Canfield and nephews of John Canfield. Edmund died in the year 1871. He left a considerable estate to Henry R. and Edward W. Canfield. Henry R. survived his father only about 6 months. Henry R. was 22 or 23 years old at the time of his death, and Edward W. was about 18 or 19 years of age. Henry's property consisted of real estate in Manistee, Mich., Chicago, Ill., and Elmira, N. Y., about $20,000 in notes, and a quarter interest in Canfield's Wrecking & Towing Line of Manistee. Edward W. Canfield was a young man of dissipated habits, subject to sprees. He became of age in the spring of 1873. John Canfield did not then turn over the estate to him. In fact, he never did so, but gave Edward sums of money from time to time. Edward did not reform, but continued dissipated until his death, which occurred in Idaho in 1893. On September 21, 1871, the will of Henry R. Canfield was probated in the probate court of Manistee county, Mich. This will was admitted to

probate, and letters issued to John Canfield, as executor, on October 16, 1871. On December 18, 1871, John Canfield filed the inventory of the estate. No accounts were filed or other proceedings had until the filing of the petition for an order of distribution of the estate on October 10, 1893. On January 27, 1884, Edward W. Canfield married Hattie H. Canfield, the complainant. This marriage took place in Milwaukee, Wis., where the parties resided for a short time, removing thence to Kansas City, Mo. The complainant shortly afterwards returned to Milwaukee, where Edward promised to join his wife, but in fact never did so. John Canfield knew of this marriage, and sent at least one check payable in whole, or jointly with her husband, Edward, to the complainant. After Edward's death, and on the 10th day of October, 1893, John Canfield filed his petition in the probate court of Manistee county, Mich., setting forth, in substance, that he had paid the specific legacies mentioned in Henry's will; that the funeral expenses and debts of the deceased had been paid; that the residue of the estate had been devised to the petitioner in trust; that, in the exercise of the discretion conferred in the will, he did not pay over the residue of the estate to Edward, but had paid out certain sums for his use and benefit; that there remained in his hands $31,283.05, and certain unsold real estate in Manistee and Chicago. Hattie H. Canfield was not made a party to this proceeding, or her possible interest in the estate, as the widow of Edward, in any manner referred to. The petition averred that upon Edward's death all the property and estate remaining in the hands of the petitioner, undisposed of, by the provisions of chapter 214 of Howell's Annotated Statutes of Michigan, reverted to the heirs or next of kin of Henry R. Canfield, deceased, who are entitled to the same. It is further averred that all of said estate, real and personal, came to Henry R. Canfield through his father, Edmund Canfield, and that the following named persons, as the petitioner is informed and believes, are the sole next of kin, and entitled to share in the residue of said estate equally, to wit: Maria D. Smith, of the age of 70 years, Clara E. Marsh, of the age of 68 years, paternal aunts, and petitioner, paternal uncle, of the age of 63 years, of Manistee, Mich. The petitioner prays an allowance for services; that a day may be fixed for hearing of the petition and accounting, and notice given to all persons interested, as the court shall direct and the law require. The court is asked to adjudicate who are the next of kin of Henry R. Canfield, entitled to said estate, real and personal, and the share of each person, and that the residue of the estate may duly be assigned to Maria D. Smith, Clara E. Marsh, and the petitioner, in equal portions. Thereupon the probate court made an order requiring the petitioner to give notice to the persons interested in the estate of the pendency of said account, and the hearing thereof, by publication for four weeks in the Manistee Advocate, a newspaper printed and circulated in said county, which order was duly published. On November 13, 1893, an order was entered in the probate court finding that the property remaining in the hands of petitioner reverted to the heirs or next of kin of the deceased, who were found to be said Maria D. Smith and Clara E. Marsh, aunts, and petitioner, uncle, of said Henry, next of kin, and entitled to share

in said residue of said estate equally. Ten thousand dollars was allowed as compensation to said John Canfield as executor and trustee, and he was directed to distribute such residue equally among said Clara E. Marsh, Maria D. Smith, and John Canfield. Afterward, on February 7, 1894, John Canfield filed a report showing that he had distributed the property pursuant to such order, and made deeds for the real estate. John Canfield subsequently turned over his share of the estate, including his compensation, to Maria D. Smith and Clara E. Marsh. Hattie H. Canfield had no notice of these proceedings until May, 1896. Upon trial the circuit court found the complainant entitled to the property remaining in the hands of John Canfield which belonged to Edward W. under the sixth clause of the will, and to all the property of Edward W. which came into his hands from any source, belonging to Edward W. in his lifetime; that the proceedings in the probate court of Manistee county, Mich., were, after Edward's death, null and void as to the complainant. An account was decreed, and reference made to a master for that purpose. After an account before the master, a final decree was entered in the circuit court adjudging John Canfield not to be entitled to any compensation as trustee or executor, "by reason of not giving actual notice to the plaintiff of his application in the probate court in the matter of the estate of Henry R. Canfield, deceased, for an order of distribution of said estate; thereby attempting to convert said estate to his own use, and deprive the plaintiff thereof." John Canfield's estate (he having died pending the suit) is charged with simple interest at the legal rate in Michigan on amounts remaining in his hands from time to time uninvested for the trust estate up to January 16, 1894, when he is found to have converted said estate to his own use, and a decree bearing interest from that date was rendered against his estate. From this decree both parties appealed, raising the questions which we shall proceed to consider.

The purpose of construction is to ascertain the intention of the testator, as expressed in his will, and, if possible, to carry that intention into effect. Precedents are numerous, and, as usual in such cases, many are cited on either side of the controversy. The construction of a will, however, depends upon the language used, read in the light of the circumstances of the particular case. No two wills are alike, and the situation of each testator, as to persons and property, is peculiarly his own. We are to ascertain, if possible, from the language used, what Henry R. Canfield intended in framing the sixth clause of his will. He had a considerable estate. Before reaching the sixth clause, we find him making minor bequests to relatives. He then comes to deal with the major portion of his estate in the residuary clause. Here he has in mind provision for his brother, Edward W., and gives the property to his uncle, John Canfield, "in trust for the use and benefit of my brother." This is the first and leading purpose of the testator,—to dedicate the property to the use and benefit of Edward. In view of the fact that Edward, although then a very young man, had fallen into practices and habits of dissipation, which, if persisted in, would render him unfit to control and manage property, the estate is not to be turned over to Edward, except in such sums as the

trustee shall deem best, until he arrives at the age of 21, and not then except the trustee shall think it best, in his judgment, to pay over and deliver to the brother "all my bequests" to him. Furthermore, the testator contemplated the contingency that Edward might not reform at 21, in which event, so long as he continued unfit to hold, control, or manage the property given under the sixth clause of the will, as a final direction, the trustee is to hold, manage, and control the property till such time as, in his judgment and discretion, he "may deem it prudent and proper to put the same under the management and control of my said brother, Edward W. Canfield, and not till then."

Did the testator contemplate that Edward might add to the follies of extreme youth the dissipation of more advanced years, and thus never become fit to use and control the property intended for him? If so, it would seem the most natural thing for the testator to meet that contingency by making other disposition of the estate. In this clause he was dealing with the bulk of his estate. He had no near kin to whom it might revert in the contingency of Edward's permanent unfitness or incapacity from dissipation or other cause. He was making, it is to be presumed, a testamentary disposition of his entire estate. A testator having his attention upon his entire estate will not be presumed, in the absence of a clear expression to the contrary, to die intestate as to any part of it. Given v. Hilton, 95 U. S. 591, 24 L. Ed. 458. If he had in contemplation that his intended bounty for Edward might fail because of his habits, it would have been consonant with the common course of events, as well as the presumption of law, that he should make some other disposition by will of his estate. This he did not do. We think it a fair inference that he did not contemplate such a contingency, but intended the estate to be Edward's at once; postponing its enjoyment first until Edward became 21 years of age, and further until such time as, in the judgment of the trustee, he had reformed sufficiently to warrant his control of the property. It is true that the sixth clause contains language which seems to indicate the necessity of conveying the property from the trustee to Edward. This language, standing alone, gives color to the claim that the estate vested in the trustee until he saw fit to convey it to Edward. But it does not overcome the purpose evident from the whole clause, read in the light of all the language used, and the things the testator has done and refrained from doing in the premises. It seems to us that the testator contemplated his brother as a wayward youth. He was the only one close to him by the ties of blood, and, until age and discipline had corrected his youthful follies, he did not wish him to control the property, which he intended for him only. He did not contemplate that his purpose might fail because of Edward's conduct, and leave the estate at sea, so far as testamentary disposition thereof is concerned. When he was disposing of small parts of his estate in other parts of the will, Henry selected the persons he wished to profit by his estate. It is reasonable to suppose he would have selected for himself the recipients of his larger bounty, had he supposed that it would never be available to his brother because of the conditions imposed. This view is in harmony, also, with the rule of law which favors the immediate vesting of estates unless the testator has clearly indicated a contrary intent.

McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015. This being the proper construction of the will, upon the death of Edward the trust in John Canfield would terminate, and the property vest absolutely in the heirs or legal successor of Edward, which in this case, it is admitted, is his widow; he having died intestate and without issue. We have examined the sections of the Michigan Revised Statutes cited by appellants which are claimed to be controlling in favor of the construction contended for by the appellants. Under section 4129, 2 Comp. Laws 1871, it seems clear that a trust estate is vested in the trustee for the purpose of executing the trust, leaving to the cestui que trust only the right to enforce the performance of the trust in equity. Under section 4131, the estate and interest not included in the trust upon the termination thereof vest in the person creating the trust, or his heirs, as a legal estate. If we concede the construction of the will contended for by appellants, the application of these sections will operate to vest the estate in Henry Canfield's heirs upon the termination of the trust. But all depends upon the proper construction of the will. If we are correct in construing the will to vest the estate in Edward Canfield, subject to the right of the trustee to withhold the use and enjoyment of it, these sections cannot operate to enlarge the estate in the trustee beyond that intended by the testator. Toms v. Williams, 41 Mich. 552–567, 2 N. W. 814.

It is claimed for the appellants that the adjudication in the probate court of Manistee county, Mich., is final as to all parties in interest, and determines conclusively the distribution of the estate in the hands of John Canfield as executor. The record shows that John Canfield was appointed executor and qualified as such in October, 1871. It was his duty to have paid the debts and legacies and settle the estate. He filed no account of his doings as such executor, and no further steps were taken in court in the premises until October 1, 1893, after the death of Edward, which occurred on April 16, 1893. In this petition John Canfield sets out that he paid the debts of Henry R. Canfield and the specific legacies as mentioned in the will; that he also paid the funeral expenses and all claims against the estate. The residue of the estate, it is stated in this petition, was devised to the petitioner in trust for the benefit of Edward upon the conditions named in the will. The petitioner then recites that he did not make over the trust estate to Edward, but made certain payments, which are set forth in detail in an account attached to the petition. After stating the death of Edward, the petition recites that all the remaining property in the hands of the petitioner, by the provisions of the Michigan statutes, reverted to the heirs and next of kin of Henry R. Canfield, who are entitled thereto under the laws of the state. It is alleged that Maria D. Smith and Clara E. Marsh, aunts, and the petitioner, uncle, are the sole next of kin of Henry, and entitled to the estate. To this proceeding Hattie Canfield was not made a party, and her relation to Edward is in no wise referred to.

It is claimed by appellants that the proceeding is in rem; that the statutory requirements of the laws of Michigan as to notice of the pendency of the proceedings have been fully complied with, and all persons interested, whether parties or not, are concluded by the order of

the probate court determining the persons entitled to the fund, and ordering the distribution thereof, in the hands of the trustee. How far such proceedings would be conclusive as to the settlement of the estate and the distribution of the funds of the estate in the hands of the executor, in a proper proceeding, we need not stop to inquire. It may be that the executor, who acted in good faith, bringing all the facts before the court, would be protected from subsequent demands after he had complied with the order of distribution made in the probate court. We are now dealing with the trust fund, which passed to John Canfield under the sixth clause of the will. We do not perceive that it makes any difference in the solution of the problem that he did not file his account as executor after paying the debts and legacies, as he should have done. He paid these obligations, and took the residue of the estate into his hands as trustee, and dealt with it as a trust estate. This appears from the recitals of his petition in the probate court. In such case, we think there is no room for the application of the doctrine which protects an executor obeying an order of distribution in a probate court. As a trustee, he was liable to be called to account in a court of chancery. This well-settled branch of equity jurisdiction does not seem to have been interfered with. On the other hand, the supreme court of that state has recognized the chancery jurisdiction as unimpaired by the statutes regulating probate practice. In Wooden v. Kerr, 91 Mich. 188, 51 N. W. 937, the supreme court, in dealing with the liability of one who was both executor and trustee under a will, held the power of the probate court alone could settle the executor's accounts and discharge his bond. The cestui que trust could alone settle with him for his actions as trustee. See, also, Weaver v. Van Akin, 77 Mich. 588, 43 N. W. 1081. After the death of Edward, John Canfield held the estate, constructively, at least, in trust for the widow of Edward, the complainant herein. In the proceeding in the probate court no mention is made of her, or any reference had to her possible rights in the estate. Certainly no principle of equity will permit a trustee to thus summarily dispose of the rights of the beneficiary. John Canfield knew of the marriage, and had sent at least one check to the complainant, as the wife of Edward. In his presentation of the rights of parties to the probate court, he declares that the estate has reverted to himself and the aunts surviving Henry. So far as the record discloses, the rights of the complainant were not in any way brought to the attention of the court. To permit the trustee to thus dispose of the rights of the real beneficiary would be to defraud her of the rights secured to her by the will. The Michigan statutes (sections 5964, 5965, How. Ann. St.) which have been held to give the probate court the jurisdiction and power to construe wills, in determining the distribution of estates in the hands of executors, contemplate notice in some form to persons interested (How. Ann. St. § 5969). The Michigan cases in which it has been held that an executor is protected in the distribution of a fund in his hands, as against all interested persons, even where the construction of the will is involved, by the order of a probate court, are to be distinguished from the case in hand. In the present case John Canfield, after the death of Edward, held the estate in trust for the real owner, who was

the widow of Edward. The question of the interest of any successor to Edward in the trust estate was not involved in the case made in the probate court, and therefore was not concluded by the adjudication. It is elementary law that a judgment, to be an estoppel, must decide the very question in controversy in a court of competent jurisdiction, where the party alleged to be estopped was duly in court, by himself or those with whom he is in privity.

It is further contended for the complainant that the court erred in not charging the account of John Canfield with compound interest upon funds in his hands belonging to the trust estate. The decree charges the estate of John Canfield with interest at the legal rate in Michigan on sums uninvested in the hands of John Canfield from time to time. This seems to be equitable. While the executor did not file his report and account seasonably with the probate court, it does not appear that he wasted the estate or derived profits therefrom for which he should be accountable. He seems to have made judicious investments of considerable portions of the estate. The terms of his trust gave no specific directions as to the investment of funds, and, when the trustee is charged with interest at the legal rate on funds uninvested, it seems that substantial justice is done.

It is further claimed that the real estate conveyed under the order of the probate court should be treated as a conversion, and the trustee held to account for the value of the same to the complainant. The circuit court held that, the order and judgment of the probate court being a nullity as to the complainant, she could still pursue the lands in the hands of those to whom John Canfield had conveyed them by direct conveyance, or grantees in subsequent conveyances from the same source of title. We have not found that John Canfield was guilty of actual fraud in conveying the premises. He was disqualified by sickness from giving his testimony, and died pending the suit. He may have been advised by counsel that it was unnecessary to make the complainant a party. Nevertheless, the proceedings, without her presence, were nugatory as to her. She never had her day in court. The will was of record in the probate court, and its construction involved in the proceeding which resulted in the order of distribution. The title was vested in Edward subject to the trust. When he died the title descended to the complainant as his legal representative. There was no adjudication that Edward died intestate or without heirs. Purchasers would be bound to take notice of the rights of his heirs, if he left any, who were not made parties. In this attitude of the case, we see nothing to prevent the complainant from recovering the lands. The decree refusing to include the value of the lands should be modified so as to show no prejudice to the complainant's right to pursue John Canfield's estate for the value of the lands, if it shall be hereafter adjudicated between her and purchasers thereof that the lands have been lost to her because of any wrongful conversion thereof by him.

In another respect we think the circuit court erred. Finding that John Canfield, by reason of not giving actual notice to the complainant of his application in the probate court for an order of distribution, had attempted to convert the estate to his own use, and to deprive the complainant thereof, he was deprived of all compensation

as executor and trustee. The probate court had fixed the compensation of John Canfield at $10,000 in both capacities. Over the accounts and compensation of Canfield, as executor, the probate court had plenary jurisdiction. We do not perceive on what principle a court, other than one having power to review the action of the court of probate, could review the order of that court, so far as the executor's account is concerned, and the order fixing compensation in that court should not be disturbed.

In the respects stated as to reserving complainant's rights as to the real estate and compensation to the trustee, the decree is modified, otherwise affirmed, with costs one-third to appellee, two-thirds to appellants, executors, etc.