## BLOSSOM et al. v. ANKETELL et al.

### (District Court, E. D. Michigan, S. D.   October 31, 1921.)

### No. 109.

1. **Wills ⬤⟿681(2)—Trustees held vested with absolute title after beneficiary's death.**

   Under a will creating a spendthrift trust for a daughter, *held* that, on the death of the daughter, the trustees retained absolute legal title to the trust property, with full discretion and power, subject only to the express terms of the trust, either to deliver the trust property to, or withhold it from, the spendthrift's children.

2. **Perpetuities ⬤⟿6(2)—Will held not attempt to impose restraint on power of alienation.**

   A will creating a spendthrift trust, and providing that the trustees, on the death of the spendthrift, should hold the property in trust for spendthrift's children, and to withhold as much thereof as they thought best until such time as they wished to surrender it to the children, *held* not an attempt to impose an unlawful restraint on, or suspension of, the power of alienation.

3. **Wills ⬤⟿680—Trust held active, and not passive.**

   A spendthrift trust created by a will, whereby trustees were to retain trust funds as long as they thought proper for the benefit of spendthrift's children after her death, *held* an active one, and not passive, after the death of the spendthrift.

In Equity.   Bill by Harold M. Blossom and others against Thomas J. Anketell and others.   Decree for defendants.

Stevenson, Carpenter, Butzel & Backus, of Detroit, Mich., and Irving Fish, of Milwaukee, Wis., for plaintiffs.

Walker & Spalding and Hinton E. Spalding, all of Detroit, Mich., for defendants.

TUTTLE, District Judge.   This is a bill to construe a will.   The case has been submitted to the court upon an agreed statement of facts and upon oral arguments and written briefs.

The testatrix, Julia H. Mills, made her last will in 1909.   She then had two married daughters living, Elizabeth Anketell and Julia Blossom, the latter then being 32 years of age.   Julia Blossom had two sons; Harold, who was then about 12 years of age, and Philip, then about 8 years old.   The said Julia Blossom was, then and thereafter up to the time of the death of her mother, a spendthrift, and known as such to her mother.   The testatrix, Julia H. Mills, died in 1913, leaving her said daughters and grandsons surviving her.   About a year later, Julia Blossom died; her two said sons surviving her.

The material provisions of the said will, which remained unchanged as made, are as follows:

"I, Julia H. Mills, being of sound and disposing mind and memory, do make, publish and declare this to be my last will and testament.

"My father devised and bequeathed to my daughter Elizabeth one-fourth of his estate and to me one-half of it.   After making his will, he expressed to me a desire that my youngest child Julia should have a share in his estate equal to that of her sister, but he did not desire to change his will on account of his age

and left it to me to carry out his wishes in this respect in such a way as would be to my daughter Judia's best interests and would place her as near as may be on an equality with her sister. In carrying out his wishes, which are also my own, I am anxious that my daughter Julia shall, after my death, be in such a position that she may not, through any indiscretion on her part, come to want or to be in straitened circumstances, and that her children shall likewise be provided for, I have concluded to place my estate in trust, as hereinafter provided. I hope that my daughter Julia will feel that, in what I have done, I have acted for the best interest of herself and her children.

"I make the following disposition of my estate:

"First: I give, devise and bequeath all my estate, real, personal and mixed, of every nature and description and wherever located, to Thomas J. Anketell, my son-in-law, William Mayer, of Waterville, N. Y., and Homer Warren, of Detroit, Michigan, the survivors and survivor of them and their successors and assigns, as trustees and in trust for the uses and purposes herein specified.

"Second: I direct that my said trustees, out of my estate pay all of my just debts and funeral expenses. * * *

"Sixth: My said trustees and their successors in said trust are authorized and empowered:

"To take possession of my estate and manage and control the same during the continuance of the trust hereinafter provided for the life of my daughter Julia, in such manner as in their judgment shall be most conducive to the interests of those concerned therein, and pay all taxes, charges and expenses of management and maintenance thereof, including reasonable compensation to themselves.

"From time to time to sell and convey, lease, mortgage, improve and dispose of said property in such manner and on such terms as to them shall seem proper, the power of mortgage to be exercised either for the payment of debts, the improvement of any part of the property, or otherwise, as in their judgment shall be desirable to carry out their trust;

"To convert realty into personalty and personalty into realty, and to reconvert the same;

"And generally to exercise as full powers of disposition and management over said property, consistent with the general purposes of the trust, as I might do if living.

"In setting apart the share of the residue of my estate hereinafter devised and bequeathed to my daughter Elizabeth, said trustees shall appraise the entire of said residue, and set apart and convey to my said daughter Elizabeth, as and for said one-fourth (¼), such portion or portions of said residue as shall in their judgment and in accordance with their said appraisement be one-fourth (¼) of said residue in value; their determination and apportionment shall be final and conclusive. · * * *

"Ninth: Subject to the payment of the debts and legacies hereinbefore provided for, I give, devise and bequeath to my daughter, Elizabeth Moss Mills Anketell, one-fourth (¼) of the residue of my estate remaining after the payment of said debts and legacies, to be turned over to her at the expiration of two years from my death, or at the expiration of the trust hereby created during the life of my daughter Julia in the other three-fourths (¾) of the residue of my estate, whichever event shall soonest occur, as and for her own property absolutely and forever. In the meantime, said one-fourth (¼) interest shall remain a part of said trust estate, and said trustees shall semiannually pay over to my said daughter Elizabeth one-fourth (¼) of the net income of said estate.

"The other three-fourths (¾) of the residue of my estate remaining after the payment of said debts and legacies and the income thereof, shall, during the life of my daughter, Julia H. Blossom, be used and applied by said trustees, so far as in their judgment may be necessary, for the support, maintenance and medical care of my said daughter, her children and the issue of any deceased child and the education of said children and of the issue of deceased children; and for the burial expenses of my said daughter and of any beneficiary of said trust who shall die before my said daughter's death.

"The trustees shall be the sole judges of the amount necessary to use for said purposes, the proportion thereof to be appropriated to each beneficiary,

and the method of application thereof: Provided, however, that while my said daughter Julia shall live, the said trustees, if the net income from said three-fourths residue in any year shall be five thousand dollars ($5,000) or more, shall devote in that year at least four thousand dollars ($4,000) of such income to said purposes, but if the net income in any year shall fall below five thousand dollars ($5,000), they shall in that year devote to said purposes at least four-fifths of such income. In case the income in any year shall, in the judgment of the trustees, be inadequate for the purposes of said trust, the trustees may, for said purposes, use any part or parts of the principal of said trust fund, being said three-fourths ($\frac{3}{4}$) interest in the residue, or borrow the necessary amount on the security thereof, in their discretion. Advances so made shall be repaid out of future surplus income if practicable. Advances not so repaid and used for the benefit of any child of my said daughter, or of the issue of any deceased child, shall, at my said daughter's death, be charged against its share, together with interest at the rate of five per cent, per annum from the date of the advancement.

"After the death of my said daughter, Julia H. Blossom, the principal of said trust estate in said three-fourth ($\frac{3}{4}$) of the residue shall be divided into as many equal shares as there are children of my said daughter then surviving and deceased children who have lawful issue then surviving. One of such shares shall be held in trust by said trustees for each of said children and one share in equal proportions for the issue of each deceased child, with the same powers and duties to the beneficiaries respectively as are given said trustees in the trust hereinbefore created for the life of my said daughter. The trust for each of the two children, Harold M. Blossom and Philip M. Blossom, of my said daughter, shall continue during his life. * * * Provided, however, that the trustees may at any time after any child or any of the issue of any deceased child shall attain majority, though before the end of the trust for it created, if in their judgment it shall be for such child's interest, terminate the trust and turn over to it its share of the trust property. At the expiration of any of said trusts, which take effect after the death of my said daughter, the property covered thereby shall be turned over to the cestui que trust as and for his own property absolutely and forever."

While the arguments of counsel in their numerous and exhaustive briefs have covered a somewhat broad range, the crucial and ultimate question in dispute for the determination of which the present suit was instituted, between the plaintiffs, the aforesaid grandsons of the testatrix, and the defendants, the aforesaid trustees, is whether such plaintiffs are, as alleged in their bill herein, "by law entitled to the whole of the income, use and profit of the trust fund provided in the said will for their benefit as and when the same shall accrue from time to time," or whether, on the other hand, the defendants are correct in their contention, as stated in their answer, that "under the terms of the trust created by said will for the benefit of said complainants after the death of their mother the trustees had and have full discretion to determine the amount that should be used and applied for the benefit of said complainants and the method of its application, and that said complainants have not the right to receive or to have applied for their benefit from said trust fund any amounts except those which the trustees may from time to time determine necessary for the use for their benefit for the purposes provided in said will."

I find no ambiguity in the language of the will in this connection. It is clearly provided by the terms of such will that after the payment of certain debts and legacies, three-fourths of the residue of the estate is devised and bequeathed to the trustees named, with the ample powers mentioned, first, and during the life of the daughter of the

testatrix, for the benefit of such daughter and her children, and then, upon the death of said daughter, to be held in trust in equal shares, by said trustees, for each of her surviving children, "with the same powers and duties to the beneficiaries respectively, as are given said trustees in the trust hereinbefore created" for the life of said daughter. The trust for each of the two children is to continue during his life, subject to the right and power of the trustees at any time after either child shall attain his majority, though before the end of the trust for him created, "if in their judgment it shall be for such child's interest," to terminate the trust and turn over to such child its share of the trust property. "At the expiration of any of said trusts," which took effect after the death of Julia Blossom, the property covered thereby shall be turned over to the beneficiary as his own property absolutely and forever. The intention of the testatrix as expressed by this language is, in my opinion, sufficiently plain. Julia Blossom having died, leaving the two sons surviving her, the trustees hold one-half of the trust property for each son as beneficiary, "with the same powers and duties to the beneficiaries, respectively, as are given said trustees" in the trust previously created for the life of their mother. The "powers and duties" thus referred to are, obviously, those conferred by the provisions of the sixth and ninth paragraphs of the will, hereinbefore quoted—that is, to take possession of the estate of the testatrix and manage and control the same in such manner as in their judgment should "be most conducive to the interests of those concerned" therein; to pay all taxes, charges and expenses of management and maintenance thereof, including reasonable compensation to themselves; from time to time to sell and convey, lease, mortgage, improve, and dispose of said property in such manner and on such terms as to them should seem proper, such power to be exercised either for the payment of debts, the improvement of any part of the property, or otherwise, "as in their judgment shall be desirable to carry out their trust"; to convert realty into personalty and personalty into realty, and to reconvert the same; and generally to exercise as full powers of disposition and management over said property, consistent with the general purposes of the trust, as the testatrix might do if living; to use the trust property, "so far as in their judgment may be necessary," for the support, maintenance, medical care, and education of said children, such trustees being the "sole judges of the amount necessary to use for such purposes, the proportion thereof to be appropriated to each beneficiary, and the method of application thereof," subject to certain provisos already mentioned. The trustees may, however, as previously pointed out, at any time after any child shall attain majority, though before the end of the trust for it created—that is, before its death—"if in their judgment it shall be for such child's interest, terminate the trust and turn over to it its share of the trust property * * * as and for his own property absolutely and forever."

[1] The language of the will leaves, in my opinion, no room to doubt that it was the wish and intention of the testatrix to vest the absolute legal title to the trust property in the trustees, for the period

and purposes recited, and to confer upon them full discretion and power, subject only to the express terms of the trust, either to deliver the trust property to, or to withhold it from, the plaintiffs herein, subject only to the express terms of the trust.

[2, 3] It is equally certain that there is here no attempt to impose an unlawful restraint upon, nor suspension of, the power of alienation, and no such effect, the estate granted being vested, and there being no violation of the rule against perpetuities; that the trust is an active one, and therefore not subject to execution as a passive, or naked, trust; that the testatrix was legally entitled to confer upon the trustees the broad, discretionary powers intrusted to them; and that such trust is not contrary to public policy nor subject to any objection to its validity presented to, or known by, this Court. Shelton v. King, 229 U. S. 90, 33 Sup. Ct. 686, 57 L. Ed. 1086; Canfield v. Canfield, 118 Fed. 1, 55 C. C. A. 169 (C. C. A. 6); Stier v. Nashville Trust Co., 158 Fed. 601. 85 C. C. A. 423 (C. C. A. 6); Ballantine v. Ballantine, 160 Fed. 927, 88 C. C. A. 109 (C. C. A. 3) Claflin v. Claflin, 149 Mass. 19, 20 N. E. 454, 3 L. R. A. 370, 14 Am. St. Rep. 393; Parker v. McMillan, 55 Mich. 265, 21 N. W. 305; Hunt v. Hunt, 124 Mich. 502, 83 N. W. 371; Ward v. Ward, 163 Mich. 570, 128 N. W. 761.

In the language of the United States Supreme Court, speaking through Mr. Justice Lurton, in the case first cited:

"The trust is not dry. but is active, and must continue, if not invalid, until the time of payment arrives. Upon what principle, then, is a court of equity to control the trustee by compelling a premature payment? It is a settled principle that trustees having the power to exercise discretion will not be interfered with so long as they are acting bona fide. To do so would be to substitute the discretion of the court for that of the trustee. Upon the same and even stronger grounds a court of equity will not undertake to control them in violation of the wishes of the testator. To do that would be to substitute the will of the chancellor for that of the testator. Lewin, Trusts (2d Am. Ed.) 448; Nichols v. Eaton, 91 U. S. 716, 724, 23 L. Ed. 254, 256.

"There being in this case no ground for saying that there have arisen circumstances and conditions for which the testatrix made no provision, we may not control the trustee, if the postponement directed by the will does not offend against some principle of positive law or settled rule of public policy. There is no pretense of perpetuity. Creditors are in no way concerned. If the testatrix saw fit to have this fund accumulate in the hands of the trustees, and thereby postpone the enjoyment of her gift, why shall her will be disregarded? The restriction she imposed may protect her bounty against ill-advised investments and waste or extravagance. She did not undertake to guard against alienation, except in so far as the alienees will take subject to the same postponement of payment. * * *

"In the leading case of Nichols v. Eaton, 91 U. S. 716, 727, 23 L. Ed. 254, 257, Mr. Justice Miller, speaking of the unanimous voice of this court, * * * touching the theory that public policy forbids restraints upon the disposition of a testator's bounty, * * * said: 'Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who gives, who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived.' * * *

"There is no reason for declaring the trust invalid. There is no higher duty which rests upon a court than to carry out the intentions of a testator when the provision is not repugnant to settled principles of public policy and is otherwise valid."

It is not necessary, for the purposes of this suit, to determine any question as to the devolution or other disposition of the trust property in the event of the death of a beneficiary under this trust before the termination, otherwise, of such trust, and no opinion is expressed upon any such question, except as may be necessarily involved in the conclusions herein reached.

The contention of the plaintiffs, as stated in the language of the bill hereinbefore quoted, must be overruled, and that of the defendants, as so stated, sustained, and a decree will be granted in accordance with the terms of this opinion.