HUNT *v.* HUNT.

WILLS—ESTATE IN TRUST—DEVISE—INSTRUCTIONS—LIFE ESTATE—
TITLE IN TRUSTEE—RIGHTS OF BENEFICIARY.

   * H. devised real estate to trustees, with power to sell and invest
       the proceeds in bonds and mortgages, or in other ways, as the
       trustees might deem safe and advisable, and to pay the income
       therefrom to her two sons, and at their death to transfer the
       property to their heirs, devisees, or legatees. *Held:*
   (1) That the permission given by the trustees to the two sons
       to occupy, use, and enjoy the real estate did not convert the
       active trust into a passive one.
   (2) That the two sons did not take life estates, and that the
       title in fee did not vest in them under 3 Comp. Laws 1897, §
       8867.
   (3) That the devise created an express trust, which is valid,
       and that the sons are entitled only to the income therefrom
       during their lives, with the right to make a testamentary dis-
       position of the principal.
   (4) Those who, upon the contingency of the sons', dying without
       children, will become beneficiaries under the will, are entitled
       to maintain a suit for the appointment of a trustee,—the orig-
       inal trustees being dead,—and to secure the preservation of
       the property in accordance with the terms of the devise.

Appeal from Wayne; Carpenter and Frazer, JJ.  Sub-
mitted June 6, 1900.  Decided June 26, 1900.

Bill by Maria T. Hunt and others against Charles J.
Hunt and the Union Trust Company, executor of the last
will and testament of Hervey C. Parke, deceased, for the
appointment of a trustee under the will of Maria E. Hunt,
deceased.  From a decree terminating the trust, and de-
claring defendant Hunt to be the owner of the trust prop-
erty in fee, complainants appeal.  Reversed.

Maria E. Hunt died testate.  The first clause of her
will reads thus:

* Head-notes by GRANT, J.

" I do hereby will, devise, and bequeath to my executors, hereinafter named, and to the survivor of them, my farm in the county of Shiawassee and State of Michigan, lying between Corunna and Owosso, in which Mrs. Henry Hunt, widow, has a life estate, in trust, however, for the following purpose, viz.: To sell and dispose of the same as soon as convenient after the death of Mrs. Henry Hunt and the termination of said life estate, and invest the proceeds thereof permanently in bond and mortgage, or in such other ways as may seem to my said executors safe and advisable, and pay over, as fast as received, the income and interest thereof, equally, to my two sons, Charles James Hunt and Joseph Nathan Hunt, share and share alike, as long as they shall live; and, upon the death of either of them, to pay over one-half of the same to his heirs, devisees, or legatees, including principal and interest."

Hervey C. Parke and Mary A. Hunt were appointed executors. Miss Hunt did not qualify. Mr. Parke acted as sole executor, closed up the estate, and, as trustee under the clause above named, exchanged the land therein mentioned for real estate in the city of Detroit. Defendant Charles and his brother, Joseph, were permitted by the trustee to enjoy the use and control of this land. Mr. Parke having died, the complainants, who, upon the death of defendant Charles intestate, would, as heirs, become entitled to his property, filed a bill for the appointment of a trustee in place of Mr. Parke. The Union Trust Company filed an answer, admitting the allegations of the bill, and that complainants were entitled to the appointment of a trustee. Defendant Charles answered, admitting the allegations of the bill as to the death of Mrs. Maria E. Hunt, the will, and its execution; the death of Mr. Parke; that at his death "the trusts created by the will were in full force and virtue, and that no trustee had been appointed in his place;" and further alleged that his brother, Joseph, died testate, having disposed of his interest in the land by will, and that he (Charles) is the sole *cestui que trust* having interest in said land, and that he has the full power and authority

to dispose of it. The court entered a decree appointing one Robert M. Chamberlain as trustee. By that decree the trustee, so appointed, was authorized to apply to the court for advice and direction in respect to the execution of said trust. Thereafter defendant Charles filed a petition in the original suit, asking that the trustee (Chamberlain) be summoned to show cause why the prayer of his cross-bill should not be granted, and the trustee directed to convey to him the real estate so held in trust under the will of Mrs. Hunt. Upon that hearing Mr. Chamberlain, the trustee, appeared, and stated to the court that, in his opinion, the trust should be terminated. Charles had made a will devising the property to his wife, who appeared in court, and asked that the decree be made. The court entered a decree terminating the trust, and declaring that defendant Charles was the owner in fee of the land.

*Le Vert Clark*, *Edwin F. Conely*, and *Orla B. Taylor*, for complainants.

*Charles J. Hunt*, *in pro. per.*

GRANT, J. (*after stating the facts*). The intention of the testatrix is entirely clear. She devised the real estate to her executors as trustees, with authority to sell, and to invest the proceeds in bond and mortgage, or such other ways as the said trustees should deem safe and advisable, the receipts therefrom to be paid over to her two sons during their lives. She empowered each of them to devise the property, whether it should be realty or personalty, but, should either fail to make a will, then it was to go to the heirs of each one. This intention of the testatrix must be carried out, unless to do so would be in direct violation of law. The trust was an active one, and the trustees and their *cestuis que trustent*—the two sons of Mrs. Hunt—could not, by any agreement or action of theirs, change the character of the estate or the fund received therefrom. *Cuthbert* v. *Chauvet*, 136 N. Y. 326 (32 N. E. 1088,

18 L. R. A. 745); *Rife* v. *Geyer*, 59 Pa. St. 393 (98 Am. Dec. 351). It follows that, even if the trustees permitted Charles and Joseph to occupy, enjoy, and manage the real estate, and receive all the rents and profits thereof, this would not change the active trust into a passive one, and deprive the other beneficiaries of the interest in the property to which, under certain contingencies, they would become entitled. It was entirely proper for the trustees to permit them the use and benefit of it.

The defendant Charles contends that the title in fee has become vested in him under section 8867, 3 Comp. Laws 1897, which reads as follows:

"When a general and beneficial power to devise the inheritance shall be given to a tenant for life or for years, such tenant shall be deemed to possess an absolute power of disposition, within the meaning and subject to the provisions of the three last preceding sections."

The three preceding sections have no application to this case, for the reason that no estate for life or years is vested in the defendant Charles.

The rule in *Shelley's Case* is abolished in this State by section 8810, 3 Comp. Laws 1897, which reads:

"When a remainder shall be limited to the heirs or heirs of the body of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heirs or heirs of the body of such tenant for life, shall be entitled to take as purchasers, by virtue of the remainder so limited to them."

*Fraser* v. *Chene*, 2 Mich. 81.

Under that section the words "heirs," "devisees," and "legatees" in this will are not words of limitation, under the rule in *Shelley's Case*, but are words of purchase.

The mistake of Charles lies in his assumption that he is a life tenant, with the devise over to his heirs. There is no life estate created by the will. The absolute title is vested in the trustees, and they alone have the right of possession. Upon them alone is the legal duty to pay the

taxes, and to protect and care for the property. The interests of Charles and Joseph as *cestuis que trustent* have none of the attributes of a life tenancy. The trustees alone are charged with the control of the property, or of the fund which they are authorized to realize from its sale. They cannot surrender the trust to their *cestuis que trustent*. They can only surrender it to their successors duly appointed by the chancery court. The only right Charles and Joseph can enforce against the trustees is the payment to them of the income and the faithful performance of the trust. This was all the testatrix intended they should have. There is no legal objection to such a trust. Upon Charles and Joseph she conferred the right to direct a testamentary disposition of the property upon the termination of the trust by their deaths. If they chose not to make such disposition, then the trustees under the will were directed to pay the fund or to deed the land over to the heirs of each. If there were no trust, and the devise were to Charles and Joseph for life, with the remainder over to their heirs, then undoubtedly they would take an allodial estate, under *Fraser* v. *Chene, supra.*

A case nearly parallel to this in its facts is *Sise* v. *Willard*, 164 Mass. 48 (41 N. E. 116). In that case complainant had a life interest in the fund, coupled with the power of testamentary disposition; and the court held that she was not entitled to an absolute transfer of the fund to her. See, also, *Bowers* v. *Porter*, 4 Pick. 198; *Tayloe* v. *Gould*, 10 Barb. 388; *Germond* v. *Jones*, 2 Hill, 569.

We have examined the authorities cited by defendant Charles, and find that they are all cases where the courts held that all the beneficial interests were before the court, and that they had the right, by consent of the trustees, to terminate the trust, and that, under such circumstances, the court would direct a transfer of the fund to the parties entitled to it. The rule is well stated in *Sears* v. *Choate*, 146 Mass. 395 (15 N. E. 786, 4 Am. St. Rep. 320):

"There is no doubt of the power and duty of the court to decree the termination of a trust, where all its objects and purposes have been accomplished, where the interests under it have all vested, and where all parties beneficially interested desire its termination. Where property is given to certain persons for their benefit, and in such a manner that no other person has or can have any interest in it, they are, in effect, the absolute owners of it, and it is reasonable and just that they should have the control and disposal of it, unless some good cause appears to the contrary."

See, also, 2 Beach, Trusts, § 764.

It is, of course, impossible to now determine who will be the heirs of Charles at his death. In the event of his dying without children, his brothers and sisters, and the children of any deceased brother or sister, will be the beneficiaries under the will. They are therefore entitled to take proceedings to protect the trust fund, to compel the appointment of trustees, and to have them properly execute the trust.

The fact that Charles has made a will is of no significance. If his will were irrevocable, he would have no interest in this suit other than the enforcement of the trust. The only interest he would then have would be the income from the estate. But he may revoke his will at any time, and die intestate. His will might also be held void. In these events, the other beneficiaries would be entitled to the property.

Decree reversed, and petition dismissed, but without costs.

The other Justices concurred.