[S. F. No. 11304. In Bank.—January 31, 1927.]

## FRANK FLETCHER DICKEY, Respondent, v. E. A. WALROND et al., as Trustees, etc., Appellants.

[1] ESTATES OF DECEASED PERSONS — TESTAMENTARY DISPOSITION TO "HEIRS"—CONSTRUCTION OF SECTION 1334, CIVIL CODE—APPLICATION OF SECTION 1386, CIVIL CODE.—Section 1334 of the Civil Code, where said section legitimately applies, makes section 1386 of the Civil Code applicable, not only for the designation and description of the takers, but also for the purpose of fixing the proportions in which each shall take.

[2] ID.—DEFINITION OF "HEIRS."—The "heirs" of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will.

[3] ID.—SECTION 1386, CIVIL CODE—DESIGNATION OF HEIRS.—Section 1386 of the Civil Code is the source in every case for a designation of the persons to meet the description of heirs.

---

1. See 26 Cal. Jur. 94.
2. See 9 Cal. Jur. 448; 9 R. C. L. 23.
3. See 9 Cal. Jur. 454.

[4] ID.—CONSTRUCTION OF WILL—WORDS OF DONATION.—Where a will provides, after making certain specific bequests, that the balance of the property shall pass to trustees to be held until two minor sons of the decedent shall reach the age of twenty-one years, and thereupon the estate in fee shall pass in an undivided one-half to the wife of the decedent and an undivided one-fourth to each son, qualified, however, by the provision, that in the event of the death of the wife during the life of the trust, the undivided one-half part that would otherwise have gone to her shall go to her "heirs at law," the words "heirs at law," as used in the will, are to be construed as words of donation and not of limitation; and upon the death of the wife before the termination of the trust the property vests in the heirs of the wife *per stirpes,* and not *per capita,* under section 1386 of the Civil Code.

[5] ID.—ESTATE OF WIFE.—Under such a will, the widow of the decedent was not vested with a life estate, with the remainder over to her heirs at law, but at most merely an equitable one during the life of the trust and perhaps for such less time as she might live.

[6] ID.—NATURE OF ESTATE—RULE IN SHELLEY'S CASE.—The fact that the widow had an equitable estate during the life of the trust, in such a case, cannot be held to support a legal estate in remainder predicated thereon, such as would have come under the rule in Shelley's Case.

---

(1) 18 C. J., p. 803, n. 19, p. 807, n. 97.   (2) 18 C. J., p. 823, n. 6, p. 848, n. 73.   (3) 18 C. J., p. 806, n. 76; 40 Cyc., p. 1382, n. 64, p. 1486, n. 49, 51.   (4) 40 Cyc., p. 1459, n. 10, 12.   (5) 40 Cyc., p. 1656, n. 28.   (6) 40 Cyc., p. 1602, n. 42, p. 1604, n. 53, p. 1605, n. 63.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Reversed.

The facts are stated in the opinion of the court.

Walter H. Linforth, Edwin V. McKenzie, and Harris, Johnson, Willey & Griffith for Appellants.

Harding & Monroe and A. E. Shaw for Respondent.

PRESTON, J.—This is an appeal by defendant F. P. Roberts from judgment of the superior court of Fresno County in an action to quiet title to an interest under the will and decree of distribution in the estate of W. J. Dickey, deceased.

The testator, W. J. Dickey, left surviving him his wife, Marchisi Josephine Dickey; two minor sons, William James Dickey, Jr., and Robert Bernard Dickey; also Frank Fletcher Dickey, plaintiff, the son of his wife by a former marriage.

His will provided for certain specific bequests; then that the balance of the property should pass to three executors, as trustees, to be by them held until the two minor sons should reach the age of twenty-one years; that thereupon the estate in fee should pass as follows: An undivided one-half to his wife and an undivided one-fourth to each son, qualified, however, by the following language, to wit: "In the event of the death of my said wife during the life of this trust, then the undivided one-half part that would otherwise have gone to her shall go to her heirs at law." The language of the will was carried into the decree of distribution.

After the death of the testator, his widow intermarried with defendant Frank P. Roberts, and thereafter on January 28, 1923, she died, leaving a last will and testament. The two sons of the trustor were living and still minors; her own son, Frank Fletcher Dickey, and her husband, Frank P. Roberts, also survived her. Frank Fletcher Dickey thereupon commenced this action to quiet title, including as defendants in his complaint the surviving trustees, Frank P. Roberts individually and as executor of the last will and testament of Marchisi Roberts, deceased, and said two minor sons.

The trial court made a finding as follows: "That as heirs of the said Marchisi Roberts, deceased, the said plaintiff and the defendants, Robert Bernard Dickey, William James Dickey and Frank P. Roberts are the owners subject to the trust hereinafter mentioned in equal shares of the undivided one-half of the property of said W. J. Dickey, deceased . . . " Being dissatisfied with the portion so decreed to him, Frank P. Roberts took this appeal under section 953a of the Code of Civil Procedure, claiming that the court erred in applying the rule of *per capita* distribution and that it should have applied the rule of *per stirpes* distribution under section 1386 of the Civil Code.

The disposition of said appeal is controlled and determined by the proper interpretation of section 1334 of the Civil Code as explained by section 1335 thereof, when construed in the light of section 1386 and also sections 778 and 779. The relevant portions of these sections are as follows:

Section 1334: "A testamentary disposition to 'heirs' . . . of any person, without other words of qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person, according to the provisions of the title on succession, in this code."

Section 1335: "The terms mentioned in the last section are used as words of donation, and not of limitation, when the property is given to the person so designated, directly, and not as a qualification of an estate given to the ancestor of such person."

Section 1386: "When any person having title to any estate not otherwise limited by marriage contract, dies without disposing thereof by will, it is succeeded to and must be distributed, unless otherwise expressly provided in this code and the Code of Civil Procedure, . . . in the following manner: . . . "

Section 778: "A remainder may be limited on a contingency which, in case it should happen, will operate to abridge or determine the precedent estate; and every such remainder is to be deemed a conditional limitation."

Section 779: "When a remainder is limited to the heirs, or heirs of the body, of a person to whom a life estate in the same property is given, the persons who, on the termination of the life estate, are the successors or heirs of the body of the owner for life, are entitled to take by virtue of the remainder so limited to them, and not as mere successors of the owner for life."

Appellant contends that section 1334 above quoted meets and disposes of the question by requiring full application of section 1386, both as to names of takers under the will and as to the proportion in which each heir shall take. On the other hand, respondent contends that section 1334, by reason of sections 778 and 779, is wholly inapplicable under the facts of the present case and that section 1386 may be resorted to only for the names or description of the class of individuals who are to take and that when said class is

ascertained they necessarily take *per capita* and not *per stirpes.*

[1] We entertain no doubt that in a case where section 1334 legitimately applies, the section makes applicable section 1386, not only for the designation and description of the takers, but also for the purpose of fixing the proportions in which each shall take. This construction is forced upon us by reason of its connection with other sections in the same chapter and also by the provisions of said section itself, for it provides that if there are qualifying words or if the words are words of limitation and not of donation, the property does not vest according to the provisions of the title on succession. This means that in some cases the property will vest under the statute and in other cases it will not so vest. The query at once arises as to what the difference is between the case where the property does vest and the case where the property does not vest according to the law of succession.

[2] "The word 'heirs' means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statutes relative to succession." (*Estate of Wilson,* 184 Cal. 63 [193 Pac. 581]. See, also, *Ginochio* v. *San Francisco,* 194 Cal. 159, 167 [228 Pac. 428].) "The 'heirs' of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will." (*Hochstein* v. *Berghauser,* 123 Cal. 681, 687 [56 Pac. 547, 549]. See, also, to the same effect, *Estate of Watts,* 179 Cal. 20 [175 Pac. 415].) The husband under our law is, of course, an heir of his deceased wife. (*In re Dobbel,* 104 Cal. 432 [43 Am. St. Rep. 123 [38 Pac. 87]; *Hochstein* v. *Berghauser,* 123 Cal. 681, 687, 688 [56 Pac. 547].) [3] These authorities must be interpreted as meaning that section 1386 is the source in every case for a designation of the persons who meet the description of heirs.

Therefore, since we must resort to section 1386 in every case for the designation of persons who take as heirs at law of a decedent, it must follow that the words "vests the property . . . according to the provisions of the title on succession, in this code" mean more than a mere designation or description; otherwise these words must be construed as surplusage. But section 1386 contains only two ingredients,

to wit: "designation" and "proportions"; if it means more than mere designation, it must include proportions. In other words, it is impossible to give any meaning to the said phrase if it does not mean that the estate shall vest in the persons designated in the proportions declared in said statute.

Then, too, this question was fairly before the court in the *Estate of Watts, supra,* where it was said: "Under section 1327 of the Civil Code, 'Technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention . . . ' It is further provided by section 1334 of the same code that 'a testamentary disposition to "heirs," "relations," "nearest relations," "representatives," "legal representatives," or "personal representatives," or "family," "issue," "descendants," "nearest" or "next of kin" of any person, without other words or qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person, according to the provisions of the title on succession, in this code.' Both sections are directly applicable here. The word 'heirs' is a. technical term, and is used to designate 'the persons who would, by the statute succeed to the real estate (or, in California, estate of any kind) in case of intestacy.' (*Clarke* v. *Cordis,* 4 Allen [Mass.], 446, 480.) 'The "heirs" of a person,' said this court in *Hochstein* v. *Berghauser,* 123 Cal. 681, 687 [56 Pac. 547, 549]), 'are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will.'

"In the will of Mrs. Watts there are no qualifying terms to limit or explain the ordinary meaning of the word 'heirs.' The testatrix says simply that she gives the residue to her heirs. The further provision that it is 'to be distributed to them according to law' only serves to strengthen the conclusion that she was directing that the property should go just as it would have gone under the statute of descent in the absence of any testamentary disposition."

This meaning was emphasized in the second appeal (186 Cal. 102, 109 [198 Pac. 1036, 1039]), where this court again said: "By the will of Lydia M. Watts, as has been seen, her

property was to go to her heirs. In the former decision in this estate it was expressly held that this meant that it should go to her heirs as they were defined in subdivision 8 aforesaid in the same manner as if she had died intestate. We have no disposition now to revise that opinion, and hold that it goes in some other proportions, especially in view of the precise language of the code just quoted."

It is not a just comment on the decisions in the *Estate of Watts, supra,* to say that the phrase "and to be distributed according to law" qualifies the words "to my heirs," for the court expressly held that said phrase but emphasized and made clear the meaning of the preceding one. (See, also, *Estate of Page,* 181 Cal. 537–539 [185 Pac. 383].) It should also be noted that the courts of practically all of the other states are in accord with this holding and there is like unanimity among the text-writers.

The case of *DeLaurencel* v. *DeBoom,* 67 Cal. 362 [7 Pac. 758], is cited as being opposed to the above views. We find nothing in that case that would justify such a claim. There is no conflict between *DeLaurencel* v. *DeBoom* and the *Estate of Watts.* The "heirs" mentioned in the DeLaurencel will were determined by subdivision 5 of section 1386 of the Civil Code. Descent by the terms of this subdivision, it has been held in *Estate of Nigro,* 172 Cal. 474, 479 [156 Pac. 1019], should be *per capita* and not by right of representation.

The other cases relied upon by respondent are *Burke* v. *Modern Woodmen of America,* 2 Cal. App. 611 [84 Pac. 275], and *Cooper* v. *Wilder,* 111 Cal. 191 [52 Am. St. Rep. 163, 43 Pac. 591], but these cases are not subject in any sense to the provisions of the chapter of the Civil Code upon the interpretation of wills, and indeed wills are to receive a more liberal construction than grants or contracts. These cases too are earlier expressions of the court without any reference to section 1334 and cannot, therefore, be held to control our action in the case now before us.

[4] Having thus concluded that section 1334 controls in cases where the word "heirs" is unqualified and is a word of donation as distinguished from a word of limitation, we now pass to an examination of the will before us to ascertain its meaning in the use of the words "heirs at law." In other words, we are to ascertain whether the words "heirs at law"

as used in the will before us are to be construed as words of donation or of limitation, there being no words of qualification in the will.

Section 1335 above quoted furnishes the key to this solution by providing that such words are words of donation and not of limitation "when the property is given to the person so designated, directly, and not as a qualification of an estate given to the ancestor of such person." At this juncture, we are met by the contention of respondent that in every case where the rule in Shelley's Case would have applied, the words must be considered words of limitation and not of donation, and thereby exclude the application of section 1334. In other words, in a case where the rule in Shelley's Case would apply, had it not been abrogated, the words "heirs at law" are words of limitation, and since the abrogation of the rule are to be held as words of purchase. Therefore, by virtue of such decisions as *Barnett* v. *Barnett,* 104 Cal. 298, 301 [37 Pac. 1049], the words must be held to designate a class only and, so designating, the class take equally and not *per stirpes.*

[5] This contention brings us face to face with the question: Was there by this will a vested life estate in the widow, Marchisi Dickey Roberts, with a remainder over to her heirs at law? If so, the words are words of limitation and not of purchase and the said heirs at law are the designation of a class.

We are unable to place any construction upon said testament that would give to the widow a vested estate, with a remainder over to her heirs at law. The devise was an express trust for a definite period of years, to wit, until the youngest son of the testator should reach the age of twenty-one years. The trust estate was not measured by the life of either the widow or any of the children. It was measured solely by a definite term of years. Indeed, in this very case the trust continued after the death of the widow and the full measure of the right of the widow during the life of the trust was to compel the performance by the trustees of their duties thereunder and to secure for herself a portion of the income thereof provided for her in the will. She was in no sense a life tenant. The most that her estate could be during the life of the trust was an equitable one for the

period thereof and perhaps for such less time as she might live.

In *Hunt* v. *Hunt*, 124 Mich. 502 [83 N. W. 371], the court had before it a clause in a will reading as follows: "I do hereby will, devise, and bequeath, to my executors hereinafter named, and to the survivor of them, my farm . . . in which Mrs. Henry Hunt, widow, has a life estate, in trust, however, for the following purpose, viz., To sell and dispose of the same as soon as convenient after the death of Mrs. Henry Hunt and the termination of said life estate, and invest the proceeds . . . and pay over, as fast as received, the income and interest thereof, equally, to my two sons, Charles James Hunt and Joseph Nathan Hunt, share and share alike, as long as they shall live; and, upon the death of either of them, to pay over one-half of the same to his heirs, devisees, or legatees, including principal and interest."

In disposing of the contention of Charles Hunt that by reason of the death of his brother the trust had terminated and was subject to cancellation the court said: "The mistake of Charles lies in his assumption that he is a life tenant, with the devise over to his heirs. There is no life estate created by the will. The absolute title is vested in the trustees, and they alone have the right of possession. Upon them alone is the legal duty to pay the taxes, and to protect and care for the property. The interests of Charles and Joseph as *cestuis que trustent* have none of the attributes of a life tenancy. The trustees alone are charged with the control of the property. . . . They cannot surrender the trust to their *cestuis que trustent*. They can only surrender it to their successors duly appointed by the chancery court. The only right Charles and Joseph can enforce against the trustees is the payment to them of the income and the faithful performance of the trust. This was all the testatrix intended they should have. There is no legal objection to such a trust. Upon Charles and Joseph she conferred the right to direct a testamentary disposition of the property upon the termination of the trust by their deaths. If they chose not to make such disposition, then the trustees under the will were directed to pay the fund or to deed the land over to the heirs of each. If there were no trust, and the devise were

to Charles and Joseph for life, with the remainder over to their heirs, then undoubtedly they would take an allodial estate under *Fraser* v. *Chene* [2 Mich. 81], *supra.*"

It will be noted that the trust provisions in this will are much stronger than the provisions of the will before us. In that case the trust endured during the life of the beneficiaries, while in the case before us it exists only for a term of years. We then conclude that during the life of the trust the widow had only a claim upon the income and no legal estate in the *corpus* thereof. (See *Estate of Shaw,* 198 Cal. 352 [246 Pac. 48].)

What was her estate, if any, after the death of her husband, independent of the trust provisions? Plainly, it was a fee if she survived the termination of the trust period and nothing if she did not. In other words, it was an estate on condition precedent as provided in sections 709 and 1346 of our Civil Code. (See, also, *Estate of Glann,* 177 Cal. 347, 350, 352 [170 Pac. 833].)

In the last cited case the court was construing a will which contained the following provision: "Fifth. If my said wife and all my children and their children shall die before the death of both of my said brothers Peter and Vincent then it is my will that all my property shall go to my said two brothers Peter and Vincent for their lives and upon their death the same·shall go to and vest in my other brothers and sisters in equal shares and as to any brother or sister who is now dead or who may die before the death of said Peter and Vincent, it is my will that his or her share shall go to his or her heirs." Speaking of this provision the court said: "That the death of the wife and issue before the death of the brothers Peter and Vincent was a condition precedent applying to the entire disposition in the fifth clause to such brothers, with remainder to the other brothers and sisters and heirs, seems too plain for argument . . . "

Here it is perfectly plain that with reference to the trust estate, the widow had what is known as a contingent remainder and so did her heirs at law. (*Hunt* v. *Lawton,* 76 Cal. App. 655 [245 Pac. 803].) But as between themselves, it is impossible to say under the terms of this will that the widow took a life estate with a remainder over to her heirs at law. The estate given the wife and the estate given the

children, if either of them took effect, would be a fee. If the fee vested in the wife the heirs at law were excluded. In other words, both the estate of the wife and the estate of the heirs at law are estates in fee on conditions precedent and neither of them can be said to be a remainder interest upon a vested estate granted to the other. Their rights are in the alternative. The widow either takes it all or nothing, and the heirs at law take the whole estate or nothing.

We, therefore, have no hesitancy in concluding that the bequest in said will to the heirs at law of Marchisi Dickey Roberts was a direct bequest within the meaning of section 1335 of the Civil Code and was not in any sense a qualification of an estate given to her.

In this connection respondent also invokes the provisions of section 778 of the Civil Code above quoted. Manifestly that section is inapplicable to the facts in this case, for, as we have found, no estate of any kind vested in Marchisi Dickey Roberts, as between her heirs at law and herself. There is in such case no precedent estate which could be abridged or determined by the happening of any contingency. (See Civ. Code, sec. 769; also, *Gray* v. *Union Trust Co.,* 171 Cal. 637, 642 [154 Pac. 306].)

[6] The fact that the widow had an equitable estate during the life of the trust cannot be held to support a legal estate in remainder predicated thereon so as to make such a set of facts as would have brought into operation the rule in Shelley's Case. That rule briefly defined is as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." (1 Preston on Estates, secs. 263–419; 4 Kent's Commentaries, 14th ed., marg. pp. 215, 216.)

One of the cardinal requirements of that rule was that the vested and remainder estates must both be legal or both be equitable and if the two estates did not so conform, it could not be held applicable. "But if the estate limited to the

ancestor be merely an equitable or trust estate, and the subsequent limitation to his heirs carries the legal estate, the two estates will not incorporate into an estate of inheritance in the ancestor, as would have been the case under the rule in Shelley's Case, if they had been of one quality, that is, both legal and both equitable estates; and the limitation to the heirs will operate as a contingent remainder." (4 Kent's Commentaries, 14th ed., marg. p. 211.)

"By his deed the grantor gave the legal estate in his property to the trustees named in his deed, and created for himself an equitable life estate, with a contingent remainder to his right heirs upon his dying leaving no children, or descendants, or widow living at the time of his death; or, in case of his leaving no children so living, and leaving a widow surviving him, then, after providing the equitable life estate for himself, he gave an equitable life estate to such widow, and remainder to his right heirs. As the preceding life estate in the grantor was an equitable estate, and the remainder to the heirs a legal estate, this limitation is not within the rule in Shelley's Case, and the limitation over to the heirs was good as a contingent remainder. *Mercer* v. *Hopkins,* 88 Md. 309, 310 [41 Atl. 156], and cases there cited; 4 Kent Comm., marg. pp. 210, 211." (*Mercer* v. *Safe Deposit & Trust Co.,* 91 Md. 102 [45 Atl. 865].)

In *Howard* v. *Trustees,* 88 Md. 309, 310 [41 Atl. 156], we have this language: "Some of the appellants earnestly contend that under the rule in Shelley's Case this life estate becomes an absolute estate, and some of them deny this proposition with quite as much earnestness. We may as well dispose of this question here. It is well settled that, in order to coalesce and form one absolute estate under this rule, the two estates must be of the same quality—both must be equitable or both legal. (*Ware* v. *Richardson,* 3 Md. 505 [56 Am. Dec. 762]; *Handy* v. *McKim,* 64 Md. 659 [4 Atl. 125].) In order to make this rule apply to the devisees under consideration, it would be necessary to cast aside the express language used by the testator by which he declared that the legal estate should be held by the trustees in trust for the life tenant, and from the expiration of the equitable life tenancy in trust for the period of twenty years, when the estate was to vest absolutely in the children or

descendants of such life tenant, if any, and in default of any such issue living at the time, then in the persons who should answer to the description of heirs at law of such life tenant. Here we have the equitable life estate, and a subsequent fee simple or absolute estate. Under the circumstances it is settled the rule in Shelley's Case cannot be invoked.''

We thus conclude that the bequest in the will before us was as to the heirs at law of Marchisi Dickey Roberts words of donation and not of limitation. In other words, that they took thereunder not by virtue of their relationship to her but as a ''designation of persons to take originally in their own right.'' (1 Preston on Estates, 264.)

It is not necessary here to pause to consider the reasons which may have prompted the legislature in the enactment of section 1334, nor to furnish reasons why wills should be in a class to themselves when questions like this are up for determination. This section doubtless serves to settle many questions which otherwise would be unsettled and indeed announces many rules which are in derogation of the common-law rules governing estates. It may also be noted in passing that reference has been made recently to section 1334 making its provisions applicable without any particular consideration having been given as to whether the words were to be considered words of donation or words of limitation. (See *Estate of Trickett*, 197 Cal. 20 [239 Pac. 406].)

Learned counsel with much earnestness have urged upon the court the harshness of a rule which would give to the surviving husband of his former widow a greater portion of a decedent's estate than that received by his own children. But the fault, if any, is to be found in section 1386 and not in section 1334. Indeed, cases are easily supposable in which the rule contended for by respondent would create equal harshness; for example, a bequest to the heirs at law of a person, said heirs being two sisters and the children of a deceased sister or brother, say six in number. Under the rule contended for by respondent, the surviving sisters, instead of getting one-third each, would each get only one-eighth, so we must concede there was the proper modicum of wisdom in the enactment of this statute.

These conclusions make necessary a reversal of the judgment of the court below, and it is so ordered, with instructions to said court to enter a decree in accordance with this opinion.

Richards, J., Seawell, J., and Curtis, J., concurred.

SHENK, J., Dissenting.—I dissent. Under the terms of the will in question the estate that vested in the heirs of the widow was, in my opinion, a contingent remainder with an equitable life estate in the widow. Such being the case, section 1334 of the Civil Code and *Estate of Watts*, 179 Cal. 20 [175 Pac. 415], have no application. On the other hand, section 779 of the same code and *Barnett* v. *Barnett*, 104 Cal. 298 [37 Pac. 1049], would compel distribution *per capita* to the heirs of the widow. I think the superior court was right and that the judgment should be affirmed.

Waste, C. J., concurred.

Rehearing denied.

Shenk, J., and Waste, C. J., dissented.