In my opinion, sections 26, 27, and 28 of chapter 37, Laws 1907 (sections 1840, 1841, and 1842, Code 1915), deal with the devolution of the interest of husband and wife in community property and were not intended to define the nature of such interest. When the Legislature said in section 7 of the act (Code 1915, § 2756) that the husband and wife may hold property as joint tenants, tenants in common, or as community property, it was supposed that these forms of tenure were understood, and that they are distinct from each other.
The statute does not undertake to define either class of holding. We are left to history and definition as found in the books to determine the nature of each of these estates. From our pronouncement in Beals v. Ares, 25 N.M. 499, 185 P. 780, and Baca v. Belen, 30 N.M. 546, 240 P. 803, 805, it appears that the interest of the wife in community property during the continuance of the marriage relation is "a present, existing, vested interest." As that proposition is not assailed in the opinion of the majority, it is not necessary to defend it.
Granted the truth of this principle, the conclusion is necessarily true that upon the death of the wife, a transmission of her interest in the community property occurs by virtue of section 1840, Code 1915, whether said section be regarded as a statute of descent and distribution or "other statute" within the contemplation of the succession tax statute.
The majority draw from this, and the section following, the conclusion that the Legislature has made community property an estate like the estate known as joint tenancy, and that the surviving husband, upon the death of the wife, takes the interest the wife had in community property during her lifetime, by survivorship by virtue of the creation of the estate.
The law-writers, in an endeavor to define community property and who the owner of it really is, have resorted to comparisons with various theories of ownership. Some have maintained that during marriage the ownership of it is in truth with the husband, so large are his powers while *Page 267 
the marriage lasts, of doing what he pleases. Others will make the husband and wife co-owners, each of them being entitled to an aliquot share of the undivided mass. Others, again, will postulate a juristic person to bear the ownership, some kind of corporation of which the husband and wife are the two members. An idea very like tenancy by entireties has occurred to one school of expositors. Another deems the relation between husband and wife so unique that it condemns as useless all attempts to employ any of the ordinary categories of the law, such as partnership or co-ownership. See McKay on Community Property, § 1180. This court, in Beals v. Ares, supra, pronounced in favor of a form of co-ownership, undefined except that it was quite different from the inchoate right of dower, or a mere expectancy or a possibility incident to the marriage relation, contingent on the wife surviving the husband. In the Civil Law of Spain and Mexico, which furnishes the historical background for our community property system, the comparison was generally to a partnership. That was the idea favored in Beals v. Ares, where it was said the wife is "an equal partner with the husband in the matrimonial gains." It was there said, also, that the power of the court to divide the property does not extend further than to set apart to each of the spouses "their undivided half interest in the property." To my mind, this expression is entirely inconsistent with any theory that the interest of the husband and wife in community property is comparable to estates by the entirety or in joint tenancy. An estate by the entirety is an estate in joint tenancy plus the unity of the marital relation. Hoyt v. Winstanley, 221 Mich. 515, 191 N.W. 213. Mr. McKay, at section 1265 of his work on Community Property, shows why this comparison should be excluded:
"Between the form of ownership, whatever it may be, by which community property is held, and the common law estate by entirety, there are essential legal differences which exclude the application of ownership by entireties from community property. Among the most prominent of these is this; estates by entirety are owned by a single person, husband and wife considered as one person, while the law of community recognizes rights in the wife, either a present right in the property or a present right to have a moiety in the future. In either case her legal personality is not merged in the husband nor is husband and wife treated as one person." *Page 268 
The Supreme Court of Arizona in the late case of Forsythe v. Paschal, 271 P. 865, 866, decided that the contrast between the common-law conception of husband and wife with respect to their property and community law system is pointed out with illustrations:
"We have considered the nature of that status (marital) in a number of cases. In La Tourette v. La Tourette, 15 Ariz. 200,137 P. 426, Ann. Cas. 1915B, 70, we said:
"`The law makes no distinction between the husband and wife in respect to the right each has in the community property. It gives the husband no higher or better title than it gives the wife. It recognizes a marital community wherein both are equal. Its policy plainly expressed, is to give the wife in this marital community an equal dignity, and make her an equal factor in the matrimonial gains.'"
And in the Cosper Case, 28 Ariz. 373, 237 P. 175, 176, we said:
"While under the common law the husband and wife were `one,' and he was always the `one,' the world has of recent years gone a long way toward recognizing that even a married woman was a human being, with most of the rights of such, and that the status of marriage partook more of the nature of a partnership than that of master and servant, or guardian and ward."
And we readopted the above language in the case of Hall v. Weatherford (Ariz.) 259 P. 282, 56 A.L.R. 903.
Under our law, therefore, the status of marriage is more analogous to that of a partnership than to any other status known.
Furthermore, it is apparent that joint tenancy is not favored in modern time. In 7 R.C.L. page 813, it is said:
"The estate in joint tenancy presents some of the most artificial rules of subtle distinctions of the ancient common law. It was once highly favored in England. Doubtless for reasons that were feudal in their character and influential in their day, but which have long since ceased to operate. Whatever may have been the causes which led to the origin of this estate, or which recommended it to our ancestors of the feudal period, it is undeniable that in this day it has grown into disfavor both in England and America. The policy of the American law is opposed to survivorship, and, accordingly, legislation abrogating the common law doctrine favorable to joint tenancy and abolishing the doctrine of survivorship has been enacted generally throughout the union." *Page 269 
That it is not favored in New Mexico is apparent from legislative enactment found in section 4762, Code 1915, originally enacted in 1852 as follows:
"All interest in any real estate, either granted or bequeathed to two or more persons other than executors or trustees, shall be held in common unless it be clearly expressed in said grant or bequest that it shall be held by both parties."
Section 10 of chapter 37, Laws 1907 (Code 1915, § 2764), now under consideration, provides:
"If the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common unless a different intention is expressed in the instrument."
We know that the right of survivorship as a characteristic of joint tenancy, if it exists here, is by virtue of the common law and not by any statute, and we know that this form of estate is not favored, and that where it exists in other jurisdictions, the element of survivorship has generally been abolished. I am unwilling by construction to ingraft such an unfavored theory onto our community property system, especially as it has not, so far as can be ascertained, been a feature of the community property estate.
Furthermore, sections 1840, 1841, 1842 of the Code 1915, being sections 26, 27, and 28 of the act under consideration, do not purport to deal with the devolution of property held in joint tenancy. The right of survivorship which is the distinguishing feature of joint tenancy, where it exists, does not depend upon the laws regulating intestate succession. The fact that the statute in question was enacted indicates that the intestate succession of an interest in community property does depend upon stautory direction. The fundamental law of community property is such that, upon the death of the wife, the legal title to a moiety of the community land as well as other property passes to the wife's heirs or devisees, even when the legal title was held by the husband during marriage. McKay on Community Property, § 1276.
Historically, that has been true in the section of our country formerly under the sovereignty of Spain and Mexico for a long time, and by statute afterwards, for over *Page 270 
50 years, and now, unless the Legislature in 1907 had changed the fundamentals. My view is that the only change which has been made is in the succession. In other words, the husband has been substituted for the children as an heir of the decedent. Formerly on the death of one of the spouses, one-half of the community property remaining after the payment of the common debts of the marriage was set aside to the surviving husband or wife absolutely, the remainder was a part of the body of the decedent's estate for descent and distribution and, in the absence of a will, descended one-fourth to the surviving husband or wife and the remainder in equal shares to the children of the decedent. Our Legislature in 1907, by chapter 37, probably as a safeguard against a rupture of the husband's business affairs caused by the wife's death if her descendants took her interest on her death, provided that the husband as survivor takes all the common property. See McKay on Community Property, 1377. This does not mean that such change has had the effect to change the fundamental characteristics of community property, but merely that the surviving husband is substituted for the children of the deceased wife as to three-fourths of her undivided one-half of the community property of which she died seized, thus passing to him all of her share instead of one-fourth thereof.
If it be said that this result is as odious and unjust to the lineal heirs of the deceased wife exclusive of her husband as joint tenancy survivorship is said to be, the answer is that the issue of the marriage would share in it eventually under the intestate laws unless it were diverted by will, and that the Legislature in 1927, chapter 163, "An Act Relating to Succession of Property," afforded mitigation by providing that when the widower dies leaving no issue, then the estate of which he died seized, which was community property of such widower and his deceased wife, while she was living, goes to the children of the deceased wife and to the descendants of such children by right of representation, and in the absence of such, then to the father and mother of such deceased wife, etc. This evinces an intention of the Legislature to deal further by way of succession with the community property to *Page 271 
which a surviving husband (or wife) has succeeded, and is more consistent with a common plan of succession than that upon the death of the wife, the community being dissolved, the community property has lost its conventional characteristics and become the separate estate of the husband through the ancient and discredited process of survivorship as in joint tenancy. I see no more reason to say that the wife's share of the community property which goes to the "surviving husband" upon her death, now goes to him by survivorship, as in joint tenancy, than that the one-fourth of the wife's interest went to such surviving husband by the statute of 1889 (C.L. 1897, §§ 2030, 2031), went to him in that manner. These sections were a part of chapter 90, Laws of 1889, entitled "An Act to Amend the Laws Relative to the Estates of Deceased Persons." That enactment dealt with community property as well as with separate property of husband and wife. Its provisions were placed by the compiler of the 1897 compilation under the title "Inheritance." Community property provisions were compiled under the chapter of "Distribution" in said title. We find section 1840 of our statute, which is the pertinent one, in the Code of 1915 under the chapter "Descent and Distribution." "Succession" denotes the devolution of title to property under the laws of descent and distribution. The title "Descent and Distribution" indicates a grouping of statutory provisions and decisions dealing with the devolution of the property of deceased persons. When we come to consider chapter 37, Laws 1907, we find its title to be "An Act in Relation to Property Rights of Husband and Wife." We find that its provisions deal not only with such property while husband and wife live together, but also after their permanent separation, although not divorced, and also with the devolution not only of their interest in community property, but of their separate property as well. It seems plain, therefore, that it was in part a statute of descent and distribution and the commission which prepared the 1915 Code quite logically put sections 26, 27, and 28 of said chapter into the Code under the general subject of descent and distribution. Section 26 (section 1840 of the Code) is entitled "Distribution of Common Property on Death of Wife." Section 27 (1841 *Page 272 
of the Code) is entitled "Distribution of Common Property on Death of Husband." Section 28 (section 1842, of the Code) is entitled "Further Succession to Property." These section headings were not prepared by the publisher or editor of the 1907 Session Laws, but by the Legislature, and are a part of the enactment. These section headings vindicate the judgment of those who prepared the Code. They also show that the Legislature used the word "Succession" and "Distribution" as synonymous. In this situation it appears that it must have been generally understood that the Legislature was dealing with succession to the decedent's interest in community property in the sense that succession is commonly understood. When the Legislature, in passing section 28 of chapter 37, Laws 1907, dealt with the separate property of the spouses and denominated its provisions "Further Succession to Property" and excluded community property which had been treated in the two preceding sections (26 and 27), we have a plain inference that the Legislature thought that community property devolved by succession, in the same way and upon the same principle, as under said section 28. In other words, "Further Succession to Property" characterized the succession provided for in sections 26 and 27 as being of the same character of succession as that provided for in section 28, which dealt with separate property of the spouses, and certainly there can be no doubt that property passing by virtue of section 28 would be liable to a succession tax. The works on statutory construction and interpretation of laws sanction these aids to construction. In Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747,44 L.Ed. 969, it is said:
"The heading to a section of a statute is proper to be considered in interpreting the statute when ambiguity exists."
In three of the community property states, Idaho, Washington, and Arizona (and in others), there are statutes controlling the succession of decedent's interest in community property. In each of those named, the surviving spouse takes one-half of the community property and the other half is subject to testamentary disposition of the deceased husband or wife, with some limitations not material to this discussion. In Idaho, in case there is *Page 273 
no testamentary disposition, the part belonging to the decedent goes to the surviving spouse. In Washington, in case no testamentary disposition has been made, it goes to the issue of the decedent, and, if there be no issue, then it passes to the surviving husband or wife. In Arizona, in the absence of testamentary disposition, decedent's share goes to his or her descendants and, in the absence of such descendants, goes to the surviving husband or wife. Each of these states has succession tax laws, and in each of them, though without judicial decision, succession taxes are collected upon the half belonging to the deceased when it passes to the survivor. Besides the absence of the power of testamentary disposition in the wife in our statute, the only essential difference between our statute and the Washington and Arizona statutes is that the descendants of the deceased are there made the favored heirs; the surviving husband or wife being called to the inheritance only in the absence of such descendants. In Idaho, this difference does not exist. There the survivor is the favored intestate heir. Although we have no judicial precedent, from Idaho it appears that the taxing officials who administer the succession tax law require the surviving husband to pay an inheritance tax on the wife's half of the community property, in face of the fact that no administration of the estate of the wife is necessary if she dies intestate. See section cited post.
According to the common law, neither spouse inherited from the other. In the United States, however, a surviving spouse is generally an heir of the deceased spouse. McKay on Community Property (2d Ed.) par. 1374. Further, at section 1378, Mr. McKay says:
"In all the community property states, the surviving spouse takes, either by inheritance or some other unnamed mode of transfer, an interest in the estate and property of the deceased, and it might be said is highly favored as heir, and instead of denying inheritance to the survivor he is quickly called to the succession of his deceased spouse, and especially is this trueof the interest of the deceased spouse in the common property.
According to the civil law, the interest of the deceased in the common property took the same course of succession as his separate property, and this was true in Louisiana until 1920, but in other states, special rules for the descent of the interest of the other in common property are quite generally enacted, and the marked tendency of this legislation is to make the surviving spouse a favored heir of the deceased." *Page 274 
I know of nothing which would prevent the Legislature from making one spouse more favored than another, or, having done so, that the surviving spouse take otherwise than as a statutory heir. The word "heirs" is not necessarily limited to blood kindred. In Dickey v. Walrond (1927) 200 Cal. 335, 253 P. 706,708, is a definition of "heirs" which seems satisfactory:
"The word `heirs' * * * means the persons who would be entitled to succeed at his death to his estate in case of intestacy, by virtue of our statutes relative to succession." (Cases cited.) "The `heirs' of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will." (Citing cases.) "The husband under our law is, of course, an heir of his deceased wife" — citing cases.
If we consider the effect of the wife's death upon the commercial aspect of the husband's affairs, we find that it would be the fact that the descendants of the deceased wife taking her interest in the community property on her death, which would cause the rupture in the husband's business affairs. This result is safeguarded against as well by favoring the surviving husband as an heir, instead of the deceased wife's descendants, and as effectively as by creating a form of estate like joint tenancy or tenancy by the entirety, with the feature of survivorship. The Legislature in section 1840, when dealing with the interest of the wife in community property which had been set apart to her by judicial decree, said that, in the absence of testamentary disposition thereof, it "goes to her descendants, or heirs,exclusive of her husband." Why the expression, "heirs, exclusive of her husband," if he were not considered an heir as to community property?
If the Legislature had in mind to safeguard against the rupture in the husband's business affairs, caused by the wife's death if her lineal heir took her interest on her death, and substituted the husband for such lineal heirs, they had the right to further effectuate such a purpose by withholding the testamentary power from the wife.
"The right to dispose of his property by will has always been considered purely a creature of statute, and within legislative control."
U.S. v. Perkins, 163 U.S. 625, 16 S.Ct. 1073, 1074,41 L.Ed. 287. Such power is not by our statutes bestowed upon persons under 21 years of age or upon persons *Page 275 
of unsound mind. Such persons die owning property, which they could not dispose of by will, and yet they die owning an interest in property and the state may control the intestate succession to such property. By withholding the testamentary power from the wife, the Legislature, having made the husband a favored heir, further barred the opportunity of the wife to disinherit him as to community property. What happens by virtue of the statute is not on that account any less an inheritance.
The Legislature may put limitations upon the power of testamentary disposition so as to protect favored heirs. For instance, in Idaho the husband and wife have power to make testamentary disposition of his or her half of the community property, but "in favor only of his, her or their children or a parent of either spouse, * * * provided that not more than one-half of the decedent's half of the community property may be left by will to a parent or parents." See Idaho Comp. St. 1919, § 7803. It is but a step further and in the same direction to withhold such testamentary power altogether.
The fact that under our statute the interest of the wife in community property passes to her husband upon her death, withoutadministration, does not indicate that a new form of estate has been created or that such interest does not pass to the husband by "succession" as that term is generally understood. As we have seen, the inheritance tax officials of Idaho have not thought that the fact that no administration of the estate of a deceased wife is necessary makes the wife's interest in community property any less property as shall "pass by will or by the intestate laws of this state."
If the Legislature did not intend to deal with the wife's interest upon her death as passing by the law of descent and distribution, why was the expression "without administration" used? In other words, it seems plain that the Legislature considered that the interest of the deceased wife was of that character and quality which would pass by the intestate laws with administration applicable thereto unless they dispensed with the administration.
I must therefore register my dissent.